United States Court of Appeals
Fifth Circuit

**F I L E D**

November 1, 2006

Charles R. Fulbruge III
Clerk

REVISED NOVEMBER 30, 2006
IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-50714
_____



UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARCUS DWAYNE MCCOWAN,

Defendant-Appellant.

_____
Appeal from the United States District Court for
the Western District of Texas, Midland/Odessa Division
No. 7:04-cr-00217-RAJ-ALL
_____


Before HIGGINBOTHAM, DENNIS, and CLEMENT, Circuit
Judges.

DENNIS, Circuit Judge:

Marcus McCowan was convicted of possession of a
firearm with an obliterated serial number, in violation
of 18 U.S.C. § 922(k), and sentenced to a term of
imprisonment of 18 months, three years of supervised

1

release and a $100 special assessment.  On appeal, he assigns as error:  (1) the refusal of the district court to suppress statements he made in a post-arrest interview; (2) the denial by the district court of his motion for acquittal; (3) the district court's classification of him as a "prohibited person" and consequent increase of his offense level at sentencing; and (4) the district court's determination that McCowan was arrested while under a criminal justice sentence and the consequent addition of two criminal history points for sentencing purposes.

## Facts

The Odessa Police placed McCowan's suspected residence under watch.  Detectives Travland and Lane had seen McCowan, also known as "Chucky," at the house twice.  On October 13, 2004, based on Travland's affidavit, they obtained a search warrant for the house and an arrest warrant for its occupants.  Prior to the execution of the warrant, Travland, Lane, and narcotics detective Duarte saw Phidel Love arrive in a car, unlock the door with a key, enter the house, and remain for twenty minutes.

2

After his exit, the officers detained Love and brought him back to the house. Upon entering the dwelling in execution of the warrant, the officers encountered Heather Wilson, who informed them that McCowan resided there. The officers found two handguns in the living room, a .45 caliber handgun found under a couch and a .380 caliber handgun, with the serial number obliterated, found underneath a smaller couch, i.e., a love seat. Beside the .380, approximately six to eight inches away, was a baggie of marijuana. The law enforcement officials found ammunition for the .380 in the only bedroom that appeared to have been used. At this point, the police outside the house saw McCowan pass by as a passenger in a car they recognized to be his brother's. They chased the car down, returned him to the house, searched him, and arrested him. They gave him Miranda warnings and began to question him. He gave them a statement in which he admitted: (1) he and Love resided at the house; (2) the handgun in question belonged to his mother; (3) he kept the handgun at the house for protection; (4) he knew its serial number had been filed off; (5) he knew that

3

possession of a firearm with an obliterated serial number was unlawful; and (6) he thought the firearm probably had been stolen. The detectives also took statements from Love and Wilson. Detective Duarte testified that their statements substantially corroborated McCowan's confession.

## **Analysis**

### 1. The Motion to Suppress

McCowan argues that the district court erred in denying his motion to suppress his post-arrest statements. He contends that his arrest was illegal because (1) the arrest warrant was defective; and (2) the officers lacked probable cause to arrest him without a warrant. Therefore, he argues that his post-arrest statements were tainted by the illegality of the arrest. McCowan did not attack the search warrant or the officers' initial entry into the house.

We review motions to suppress under two standards: (1) we accept the district court's findings of fact unless clearly erroneous; and (2) we review the ultimate constitutionality of the law enforcement action de novo.

4

<u>United States v. Orozco</u>, 191 F.3d 578, 581 (5th Cir. 1999).

We need not address the validity of the arrest warrant in question. McCowan's arrest was a lawful warrantless arrest based upon probable cause. "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." <u>United States v. Ramirez</u>, 145 F.3d 345, 352 (5th Cir. 1998) (citing <u>United States v. Shugart</u>, 117 F.3d 838, 846 (5th Cir. 1997)). At time of the arrest, the officers knew that: (1) the warrant affidavit listed "Chuck" McCowan as a suspect; (2) Marcus McCowan used and was known by that name; (3) the occupant Wilson said McCowan lived in the house; (4) the police had seen McCowan at the house twice before; (5) the police saw McCowan motoring past the house during the search; and (6) the search uncovered drugs and a firearm with an obliterated serial number. The combination of these facts was sufficient to give the officers probable

5

cause to believe McCowan resided in the house and used it in connection with drug and handgun related crimes. Thus, the police had probable cause to arrest him for these offenses. Consequently, his post-arrest statement resulted from a lawful, rather than unlawful, arrest. Accordingly, the district court did not err in denying McCowan's motion to suppress his post-arrest statements.

## 2. The Motion to Acquit

McCowan asserts that the district court erred in denying his motion for acquittal. He contends that the evidence is insufficient to support his conviction. Specifically, he argues that the only evidence linking him with the altered firearm is his own uncorroborated confession.

We review denials of motions to acquit de novo. United States v. Delgado, 256 F.3d 264, 273 (5th Cir. 2001). "The jury's verdict will be affirmed if a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt." Id.

When the district court seizes on a confession as the

6

keystone evidence presented, it must ensure there is sufficient corroborating evidence. Corroborating evidence is sufficient where it justifies a jury's inference of the truth of the confession. United States v. Deville, 278 F.3d 500, 507 (5th Cir. 2002).

To prove a violation under 18 U.S.C. § 922(k), the government must show, among other elements, that the defendant knowingly possessed the firearm.[1] United States v. Johnson, 381 F.3d 506, 508 (5th Cir. 2004). "Possession may be actual[2] or constructive and may be proved by circumstantial evidence. Constructive possession is the ownership, dominion or control over an illegal item itself or dominion or control over the premises in which the item is found." United States v. De Leon, 170 F.3d 494, 496 (5th Cir. 1999) (internal citation omitted). Proof of constructive possession requires "some evidence supporting at least a plausible inference that the defendant had knowledge of and access

---

[1] McCowan does not challenge the sufficiency of the evidence on the other elements of the crime.

[2] The parties have not argued that actual possession can be proven.

to the weapon or contraband." <u>United States v. Mergerson</u>, 4 F.3d 337, 349 (5th Cir. 1993) (interpreting 18 U.S.C. § 922(g)).

The district court found that the following independent evidence corroborated McCowan's confession: (1) Detective Duarte testified that Wilson's and Love's statements "pretty much matched" McCowan's, identifying him as the principal occupant of the house; (2) police saw McCowan at the house twice before the warrant was executed; and (3) officers outside the house saw McCowan motoring past the house during the search. Additionally, items of evidence not alluded to by the district court further corroborated the confession. These include: (1) the fact that only the living room and one bedroom showed signs of occupation and that an officer stated that the house looked recently moved into, which confirms McCowan's statements of the same; and (2) the appearance of the personal effects in only one bedroom confirmed McCowan's statement that he lived in that room and owned the gun. Taking all this evidence together, the confession is substantially corroborated, <u>i.e.</u>, the

evidence supports the inference that McCowan "had knowledge of and access to" the gun in question.

### 3. Classification as an Unlawful User of Marijuana in Possession of a Firearm

The district court classified McCowan as a "prohibited person" because he was an "unlawful user of a controlled substance." See United States Sentencing Guidelines Manual § 2k2.1(a)(6), cmt. 3. Based on this classification, the court increased his offense level at sentencing. McCowan, however, asserts that there is no evidence that he possessed the marijuana and the firearm simultaneously.

This court reviews the district court's interpretation and application of the Guidelines de novo; factual findings are reviewed for clear error. United States v. Villanueva, 408 F.3d 193, 202-03 (5th Cir. 2005).

We find no error in the district court's determination that McCowan qualified as a prohibited person because he was an unlawful user of a controlled substance. As explained by this court in United States

v. Patterson, 431 F.3d 832, 838-39 (5th Cir. 2005), when interpreting the term "unlawful user," circuit courts typically discuss contemporaneousness and regularity.

In Patterson, the defendant appealed his conviction, contending the trial court erred in its jury instructions regarding "unlawful users." Specifically, in his appeal, Patterson complained of the inference instruction advocated by the government and requested instead the definition adopted by the Fifth Circuit in United States v. Herrera (Herrera I).[3] In Herrera I, the court defined "unlawful user" as "one who uses narcotics so frequently and in such quantities as to lose the power of self-control and thereby pose a danger to the public morals, health, safety, or welfare. In other words, an 'unlawful user' is one whose use of narcotics falls just short of addiction." Id. at 323-24. The Patterson court rejected the Herrera I definition adopted by the district court, explaining, "The Herrera I standard employed by the district court was rejected by this court in Herrera II, [300 F.3d 530 (5th Cir. 2002)]." Id. at 838. The court

---

[3] 289 F.3d 311 (5th Cir. 2002).

then turned to the inference instruction.  The source of the inference instruction is found in the regulation implementing 18 U.S.C. § 922(g)(3), namely 27 C.F.R. § 478.11.  That regulation provides:

> Unlawful user of or addicted to any controlled substance. A person who uses a controlled substance and has lost the power of self-control with reference to the use of controlled substance; and any person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician. Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct. A person may be an unlawful current user of a controlled substance even though the substance is not being used at the precise time the person seeks to acquire a firearm or receives or possesses a firearm. An inference of current use may be drawn from evidence of a recent use or possession of a controlled substance or a pattern of use or possession that reasonably covers the present time, _e.g._, a conviction for use or possession of a controlled substance within the past year; multiple arrests for such offenses within the past 5 years if the most recent arrest occurred within the past year; or persons found through a drug test to use a controlled substance unlawfully, provided that the test was administered within the past year....

27 C.F.R. § 478.11. The _Patterson_ court discussed the arguments of _Herrera II_, highlighting the Government's

11

concession that to qualify as an unlawful user, the "drug use would have to be with regularity and over an extended period of time." Patterson, 431 F.3d at 838. The Patterson court implicitly adopted this definition, stating, "In Patterson's case, the 'pattern of use' language in the inference instruction aligns with the above-quoted 'period of time' language considered by the Herrera II court; moreover, the inference instruction properly requires a time frame that coincides with possession of the firearm." Id.

The Patterson court supported its rationale with the synonymous definitions found in other jurisdictions. It pointed to the explanations of the Third Circuit,[4] Fourth Circuit,[5] Eighth Circuit,[6] and Ninth Circuit[7] to illustrate

---

[4] United States v. Augustin, 376 F.3d 135, 139 (3d Cir. 2004) ("[T]o be an unlawful user, one needed to have engaged in regular use over a period of time proximate to or contemporaneous with the possession of the firearm.").

[5] United States v. Jackson, 280 F.3d 403, 406 (4th Cir. 2002) (upholding district court finding that the prosecution must establish a "pattern of use and recency of use.")

[6] United States v. Turnbull, 349 F.3d 558, 561 (8th Cir. 2003) ("[C]ourts generally agree the law runs the risk of being unconstitutionally vague without a judicially-created temporal nexus between the gun possession and the regular drug use.").

[7] United States v. Purdy, 264 F.3d 809, 812-13 (9th Cir. 2001) ("[T]o sustain a conviction under § 922(g)(3), the

12

the support of its approach.  <u>Patterson</u>, 431 F.3d at 838–39.

In the instant case, McCowan qualifies as an unlawful user.  He admits daily use of marijuana from age 13 to August 2004 and the recreational use of cocaine at age 15.  He tested positive for marijuana use in April 2005.  His drug use falls within the definition of "unlawful user" implicitly defined in <u>Patterson</u> in that McCowan followed a pattern of use over an extended period of time.  Accordingly, we find no error on the part of the district court.

## 4. Arrest While Under Criminal Justice Sentence

McCowan asserts that the district court erred in considering him to be "under a criminal justice sentence," which ultimately added two points to his criminal history, per U.S.S.G. § 4A1.1. He acknowledges that, under the guidelines, he would qualify for this classification, as he was under an outstanding violation warrant from a prior sentence. <u>See</u> U.S.S.G. §§ 4A1.2(m),

---

government must prove...that the defendant took drugs with regularity, over an extended period of time, and contemporaneously with his...possession of a firearm.").

13

4A1.1(d) cmt. 4. However, he argues that the Texas courts lacked jurisdiction over his probation under Texas law because they failed to exercise due diligence to execute the warrant for his probation violation.

McCowan's argument is foreclosed by United States v. Anderson, 184 F.3d 479, 480-81 (5th Cir. 1999). In Anderson, this court held that an outstanding Texas probation violation warrant mandated a two-point increase under the sentencing guidelines despite the lack of effort on the part of the authorities to execute the warrant. The court determined that the guidelines do not require this court to consider the diligence of state authorities in executing the warrant. Id. at 481. The district court therefore did not err in applying the two-point increase.

## Conclusion

For these reasons, we affirm the judgment of the district court.

AFFIRMED.