# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 6, 2023

Lyle W. Cayce
Clerk

No. 21-40926

United States of America,

*Plaintiff—Appellee*,

*versus*

Abdullah Khabir Yusuf,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:21-CR-617-1

Before Stewart, Willett, and Oldham, *Circuit Judges*.
Andrew S. Oldham, *Circuit Judge*:

Abdullah Yusuf was stopped by Border Patrol near Laredo, Texas, while smuggling 84 illegal aliens in a trailer. A jury convicted him for trafficking aliens. On appeal, Yusuf argues the jury had insufficient evidence. We disagree and affirm.

I.

On March 19, 2021, Abdullah Yusuf pulled a flatbed trailer north on Interstate 35. At a Border Patrol checkpoint near Laredo, Texas, a police dog alerted to Yusuf's vehicle. Further inspection revealed that the trailer carried

No. 21-40926

84 illegal aliens inside several wooden crates arranged in a rectangle and covered by a tarp. The Government charged Yusuf with transporting illegal aliens within the United States for financial gain and conspiring to do the same. 8 U.S.C. § 1324(a)(1)(A)(ii), (a)(1)(A)(v)(I), (a)(1)(B)(i).

Yusuf waived his *Miranda* rights. He then told Homeland Security Inspector Juan Carlos De Arcos that he was headed to Dallas and didn't know what he was hauling. Yusuf claimed a brokerage company named "You Brokerage" paid him $2,700 to haul the load. He said he arrived at the pickup location—a lot on Auburn Road in Laredo—between 11:00 p.m. and 12:00 a.m. On his telling, Yusuf then backed his trailer to the loading dock, took his tractor to the Flying J to wait while the trailer was being loaded, returned an hour later, hooked his tractor to the now-loaded trailer, received a bill of lading ("BOL"), and started for Dallas.

Agent De Arcos testified that Jamco International, Inc. owned the Auburn Road lot and used it for storing empty trailers. The lot had a "loose gravel" surface. The lot had no warehouse, loading equipment, or loading dock. A representative from Jamco testified that the lot only had one entrance, locked daily from 9:00 p.m. to 9:00 a.m.

Agent De Arcos also testified that his investigation into "You Brokerage" revealed no record of the company's existence. The phone number Yusuf provided for "You Brokerage" didn't work. Agent De Arcos could not find a logbook in Yusuf's tractor. He did, however, find the BOL for the load in question. It identified USA Trucking—not Yusuf's company, Steel on Steel Transportation—as the carrier, contained a trailer number that didn't match Yusuf's trailer, included an origin address other than Auburn Road, and listed a delivery address in North Carolina, not Dallas. Agent De

Arcos testified that the BOL appeared to have been forged by doctoring an older one, also found in the tractor.[1]

Two of the aliens found in Yusuf's trailer also testified. Both acknowledged that they paid several thousand dollars to be smuggled into the United States. Whereas Yusuf said the trailer was loaded at the Jamco "loose gravel" lot, both aliens said the trailer was parked on hard ground made of "cement or concrete," and one said the loading occurred "in an alley," not an open lot. And whereas Yusuf claimed he took his tractor to the Flying J while the trailer was being loaded, one of the aliens testified that he walked past the tractor right before climbing into the trailer. Once all 84 aliens were loaded, the truck left roughly two minutes later.

Yusuf moved for a judgment of acquittal at the close of the Government's case. The district court denied it. Yusuf then took the stand. He denied ever agreeing to transport aliens and claimed he didn't know there were people in his trailer. Yusuf reaffirmed the statement he had given to Agent De Arcos months earlier. He said the "You Brokerage" representative told him to pick up the load at the Auburn Road lot. When he arrived, Yusuf was told to leave his trailer and that he would receive a call when the load was ready. Yusuf left the lot, walked his dogs, and waited about 45 minutes to an hour. When Yusuf returned to the lot, he found his trailer loaded and turned around so that it was facing the exit. He hooked up to the trailer (which he said takes roughly 5 minutes), ensured the straps were secure, received the

---

[1] USA Trucking Senior Vice President George Henry testified that the older BOL was from a trip undertaken by Yusuf for USA Trucking. Henry further testified that the trailer identified in both BOLs had not been in Texas since February 3, 2021. Moreover, USA Trucking had no records of anything recently being shipped to Bessemer, North Carolina—the address on the newer BOL.

No. 21-40926

BOL from a person working at the lot, then traveled north on I-35 toward Dallas.

The defense rested, but Yusuf didn't renew his motion for a judgment of acquittal. The jury convicted Yusuf on all counts, and the court sentenced him to 70 months' imprisonment and 3 years' supervised release. Yusuf timely appealed.

## II.

We (A) explain the particularly exacting standard that applies to unpreserved sufficiency-of-the-evidence challenges. Then we (B) hold that Yusuf fails to clear that nearly insurmountable hurdle.

## A.

"The standard of review for insufficiency-of-the-evidence claims depends on whether the claims were preserved." *United States v. Suarez*, 879 F.3d 626, 630 (5th Cir. 2018). For preserved sufficiency claims, we give "substantial deference to the jury verdict" and affirm if "a rational jury could have found each essential element of the offense beyond a reasonable doubt." *United States v. Delgado*, 672 F.3d 320, 330 (5th Cir. 2012) (en banc) (quoting *United States v. Pennington*, 20 F.3d 593, 597 (5th Cir. 1994)); *see also United States v. Nolasco-Rosas*, 286 F.3d 762, 765 (5th Cir. 2002) ("We do not consider whether the jury correctly determined innocence or guilt, but whether the jury made a rational decision."). And in doing so, we "view[] the evidence in the light most favorable to the verdict and draw[] all reasonable inferences from the evidence to support the verdict." *United States v. Jimenez-Elvirez*, 862 F.3d 527, 533 (5th Cir. 2017) (quotation omitted). That's a high bar. *See United States v. McNealy*, 625 F.3d 858, 870 (5th Cir. 2010) (describing the standard as "highly deferential"); *United States v. Cabello*, 33 F.4th 281, 288 (5th Cir. 2022) (describing the standard as placing a "heavy thumb on the scale in favor of the verdict").

4

No. 21-40926

Yusuf, however, didn't preserve his sufficiency challenge. *See United States v. McIntosh*, 280 F.3d 479, 483 (5th Cir. 2002) ("When the defendant moves for judgment of acquittal at the close of the government's case in chief, and defense evidence is thereafter presented but the defendant fails to renew the motion at the conclusion of all of the evidence, he waives objection to the denial of his earlier motion." (quotation omitted)). So Yusuf faces an even greater hurdle. We review unpreserved claims under the familiar four-factor plain-error standard:

> First, there must be an error or defect . . . . Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the district court proceedings. Fourth and finally, if the above three prongs are satisfied, the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Puckett v. United States*, 556 U.S. 129, 135 (2009) (quotation omitted).

Meeting all four prongs of plain-error review is "difficult, as it should be." *Ibid.* (quotation omitted). But where, as here, the unpreserved claim is a sufficiency-of-the-evidence challenge, the standard of review is doubly difficult. *Cf., e.g.*, *Johnson v. Sec'y, DOC*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."). That's because the "substantial deference" that we generally afford verdicts combines with the "exacting" plain-error standard to create an exponentially more difficult standard of review than either one standing alone. *Delgado*, 672 F.3d at 330–31; *see also Cabello*, 33 F.4th at 288. Indeed,

a sufficiency error satisfies the second prong of plain-error review only when "the record is *devoid of evidence* pointing to guilt." *Delgado*, 672 F.3d at 331 (quotation omitted). Mere insufficiency doesn't cut it. Rather, the movant must prove that the evidence was so completely, obviously, and unbelievably inadequate that allowing the verdict to stand would be a "shocking" and "manifest miscarriage of justice." *United States v. Smith*, 878 F.3d 498, 503 (5th Cir. 2017) (quotation omitted). These combined standards are tantamount to the eye of a virtually impassable needle. Yusuf cites no case where a defendant threaded it.

## B.

This case will not be the first.

To obtain a conviction under 8 U.S.C. § 1324, the Government must prove the accused "(1) agreed with one or more persons (2) to transport an undocumented alien inside the United States (3) in furtherance of his unlawful presence (4) knowingly or in reckless disregard of the fact that the alien's presence in the United States was unlawful." *Jimenez-Elvirez*, 862 F.3d at 533–34; *see also* 8 U.S.C. § 1324(a)(1)(A)(v)(I). And for a substantive transportation offense, the Government must prove that (1) "an alien entered or remained in the United States in violation of the law," and the accused (2) "transported the alien within the United States with intent to further the alien's unlawful presence," (3) "knew or recklessly disregarded the fact that the alien was in the country in violation of the law," and (4) acted for financial gain. *Nolasco-Rosas*, 286 F.3d at 765; *see also* 8 U.S.C. § 1324(a)(1)(A)(ii), (a)(1)(B)(i); *United States v. Ruiz-Hernandez*, 890 F.3d 202, 210 (5th Cir. 2018).

Yusuf argues that the Government failed to prove that he knew illegal aliens were in his truck, that he agreed with anyone to transport illegal aliens, or that he sought to further their unlawful presence in the United States. But

viewing the evidence presented at trial in the light most favorable to the verdict—and drawing all reasonable inferences in support of the verdict—Yusuf doesn't come close to meeting the doubly deferential plain-error-sufficiency burden.

Start with knowledge. "[K]nowledge may be—and often must be—shown by circumstantial evidence." *United States v. Mata*, 839 F. App'x 862, 867 (5th Cir. 2020) (per curiam) (collecting cases); *see also United States v. Garcia*, 883 F.3d 570, 575 (5th Cir. 2018) (noting that a defendant's mental state is "almost always proved by circumstantial evidence" (quotation omitted)). Consciousness of guilt can be inferred from a host of factors, including control over the vehicle where the illegal object or alien is concealed, conflicting or inconsistent statements, implausible explanations, incomplete answers to questions by law enforcement, demeanor, and lack of concern or surprise when the illegality is discovered. *E.g.*, *United States v. Diaz-Carreon*, 915 F.2d 951, 954 (5th Cir. 1990); *United States v. Rodriguez*, 776 F. App'x 249, 250 (5th Cir. 2019) (per curiam). In the alien-smuggling context, we've also considered additional factors such as whether the defendant is the sole driver or occupant of the tractor and if it would be reasonable to place the fate of a lucrative voyage in the hands of an unwitting party. *E.g.*, *Mata*, 839 F. App'x at 867–68; *Rodriguez*, 776 F. App'x at 250; *United States v. Durant*, 167 F. App'x 369, 370 (5th Cir. 2006) (per curiam).

At Yusuf's trial, the Government presented a mountain of evidence indicating that Yusuf knew he was hauling illegal aliens. Yusuf was the sole driver and occupant of the truck in the trailer of which 84 illegal aliens were discovered; that alone is probative of knowledge. *Durant*, 167 F. App'x at 370. The jury also heard abundant evidence that Yusuf's story lacked credibility. *United States v. Gutierrez-Farias*, 294 F.3d 657, 660–61 (5th Cir. 2002) (inferring knowledge from less-than-credible explanations). Just to name some of the inconsistencies: Yusuf testified the trailer was loaded in an open

lot, but one of the aliens said he boarded the trailer in an alley; Yusuf testified his trailer was loaded on a gravel surface, but both aliens said the surface was concrete; Yusuf testified he pulled his trailer up to a loading dock, but Jamco's Auburn Road location doesn't have a loading dock; Yusuf testified he pulled into the Auburn Road lot around midnight, but the Auburn Road lot was locked daily from 9 p.m. to 9 a.m. The jury was entitled to discredit Yusuf's testimony and conclude that he knew exactly what he was doing. *United States v. Grant*, 683 F.3d 639, 642 (5th Cir. 2012) ("The jury retains the sole authority to weigh any conflicting evidence and to evaluate the credibility of the witnesses." (quotation omitted)); *see also United States v. Campos*, 354 F. App'x 97, 98 (5th Cir. 2009) (per curiam) ("The jury heard the testimony of Campos regarding his alleged lack of knowledge of the alien's presence and apparently did not find it to be credible.").

Lastly with respect to knowledge, the Government presented evidence indicating Yusuf was present when the aliens were loaded onto the trailer. One of the aliens testified that he walked past Yusuf's tractor before climbing onto the trailer. And once he boarded the trailer, the truck left roughly two minutes later. This directly contradicts Yusuf's sworn statement that he took his tractor to the Flying J while the trailer was being loaded and that upon his return it took at least five minutes to hook his tractor back onto the trailer before commencing the journey north. *United States v. Meyer*, 733 F.2d 362, 363 (5th Cir. 1984) ("False exculpatory statements may be used not only to impeach, but also as substantive evidence tending to prove guilt.").

Yusuf further argues that the evidence was insufficient to show that he conspired with anyone to transport aliens. But "[g]iven the testimony of the aliens regarding the coordination of the trip, the other persons involved in the [loading and] transport, and the inference that [Yusuf] knew he was transporting aliens, the evidence also reasonably supports an inference that

[Yusuf] agreed to participate in the organized smuggling operation." *Rodriguez*, 776 F. App'x at 250. Further, the jury was entitled to infer "from the large quantity and value of [aliens], and the difficulty of secreting [them] in the [trailer], that others were involved in the scheme." *Gutierrez-Farias*, 294 F.3d at 661. Yusuf himself even acknowledged that he agreed with at least one other individual—the fictional "You Brokerage" broker—to transport the load.

Finally, Yusuf argues that the Government didn't produce sufficient evidence that he sought to further the illegal aliens' presence in the United States. That's wrong for several reasons. First, and most obviously, Yusuf "was found to be attempting to drive aliens away from the border while they were hidden in a trailer—passing through a Border Patrol checkpoint at an hour described as a peak time for smuggling." *Mata*, 839 F. App'x at 869. Next, Yusuf was carrying a false BOL for the journey. Together, the testimony of Agent De Arcos and USA Trucking Senior Vice President George Henry supported the inference that Yusuf himself forged the BOL to facilitate his drive north. Lastly, the jury was well in bounds to find that Yusuf's financial prospects were contingent on the aliens' safe passage into the United States. Both aliens who testified said they agreed to pay at least $10,000 to be smuggled into the United States. If all 84 aliens paid even close to that sum, then Yusuf's journey north had significant financial stakes. "[T]he jury could have reasonably inferred that [Yusuf] would not have been entrusted with such a valuable cargo if []he had not been knowledgeable and involved in the alien-smuggling scheme." *Durant*, 167 F. App'x at 370.

Yusuf fails to prove the trial evidence was insufficient—much less that it was so obviously inadequate that it would satisfy our doubly deferential standard of review.

AFFIRMED.