# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 7, 2023

Lyle W. Cayce
Clerk

No. 21-50642

_____

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

VICTOR MANUEL CAMPOS-AYALA; MARTIN MONCADA-DE LA CRUZ,

*Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:21-CR-38-2
USDC No. 4:21-CR-38-1

_____

Before RICHMAN, *Chief Judge*, and ELROD and OLDHAM, *Circuit Judges*.
PRISCILLA RICHMAN, *Chief Judge*:

Victor Campos-Ayala and Martin Moncada-De La Cruz appeal their convictions of possession with intent to distribute 100 kilograms or more of marihuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Campos-Ayala and Moncada-De La Cruz argue that the evidence was insufficient to support their convictions. Because the jury could not reasonably conclude based on the available evidence that either Campos-Ayala or Moncada-De La Cruz had

possession of the marihuana with intent to distribute, we reverse and vacate their convictions.

**I**

Troopers with the Texas Department of Public Safety pulled over a vehicle containing five passengers and five large bundles of marihuana. The driver, a juvenile, was immediately removed, handcuffed, and seated away from the highway. The passengers, including Campos-Ayala and Moncada-De La Cruz, were instructed to remain inside the vehicle, wedged between the bundles of marihuana. Agents with the U.S. Border Patrol arrived and began questioning Campos-Ayala and Moncada-De La Cruz in Spanish. Agent Ramos asked Campos-Ayala and Moncada-De La Cruz, "Do you know what you're on?" One of them responded, "uh" or "no." Agent Ramos asked, "the weed, right" or "that's marijuana," to which one of them nodded in the affirmative and the other stated, "yes." Campos-Ayala and Moncada-De La Cruz were removed from the vehicle shortly after. While frisking Campos-Ayala, Agent Ramos asked, "Why did you help with the drugs?" Campos-Ayala responded, "I didn't." While escorting Campos-Ayala to the transport van, Agent Ramos asked, "Why did you cross with the drugs?" Campos-Ayala responded, "I didn't, I just helped."

Campos-Ayala, Moncada-De La Cruz, and another passenger in the vehicle were transported to a station with agents from the Drug Enforcement Administration (DEA). At the station, all three gave the same basic story. The passengers were strangers but crossed the border together and flagged down a random car in hopes of travelling further into the United States. There were no drugs in the vehicle when they first accepted the ride. After they had been on the road for some time, the driver dropped the passengers off at a roadside park and told the passengers he would come back for them. When the driver returned, the car was loaded with the large bundles of

marihuana.  Agents Kettani and Bustamante testified that Moncada-De La Cruz said "he helped rearrange [the bundles of marihuana] so that everybody could fit inside the vehicle, because it's a small vehicle."  Agent Bustamante elaborated that the agents believed, in doing so, Moncada-De La Cruz "was possessing the marijuana inside the vehicle."  DEA Agent Kettani testified that Campos-Ayala "ma[de] a statement that he understood what his charge was," stating, "He understood why he had been arrested.  And in Spanish he said . . . Well, I guess that's how it goes.  Yes, I was in possession of the marijuana."  Agent Bustamante confirmed that Agent Kettani was asking Campos-Ayala if he "understood why he was being arrested," and "what charges [were] being pressed against him," to which Campos-Ayala responded in Spanish slang, "That's just the way things are and I was in possession of the marijuana."  Bustamante also testified that Campos-Ayala said, "I guess that's just the way things are, that's the way things happen," and that "he understood that he was in possession of the marijuana."

## II

Campos-Ayala and Moncada-De La Cruz argue that the evidence was insufficient to support their convictions for possession with intent to distribute.  They contend that the evidence only shows their presence around a person who possessed marihuana and offered them a ride.  The Government contends that the defendants' close proximity to the drugs, Campos-Ayala's statement to Agent Kettani that he understood he was in possession of the bundles of marihuana, Campos-Ayala's statement to Agent Ramos that he helped, and Moncada-De La Cruz's statement that he helped rearrange the bundles so that everyone could fit in the car proved their possession.  Additionally, the Government contends that the jury could reasonably conclude the defendants' reentry into the car with knowledge that the driver was transporting marihuana indicated they joined in the crime and

possessed the marihuana in furtherance of their own ends of travelling farther into the United States.

While a preserved challenge to the sufficiency of the evidence is reviewed de novo, an unpreserved challenge is reviewed for a manifest miscarriage of justice.[1]  Under de novo review, "we will affirm . . . if a reasonable trier of fact could conclude . . . the elements of the offense were established beyond a reasonable doubt."[2]  Under the "exacting" manifest miscarriage of justice standard, "a claim of evidentiary insufficiency will be rejected unless the record is devoid of evidence pointing to guilt or if the evidence is so tenuous that a conviction is shocking."[3]  Under both standards, "we consider in the evidence in the light most favorable to the government, giving the government the benefit of all reasonable inferences and credibility choices."[4]  Furthermore, although the jury is free to choose among reasonable constructions of the evidence,[5] and we will not second-guess the jury's reasonable determinations as to evidentiary weight and witness credibility,[6] the jury may not "pile inference upon inference to" find possession with intent to distribute and it must "limit itself to reasonable constructions of the evidence."[7]

_____

[1] *United States v. McDowell*, 498 F.3d 308, 312-13 (5th Cir. 2007).

[2] *Id.* at 312 (internal quotation marks omitted).

[3] *United States v. Phillips*, 477 F.3d 215, 219 (5th Cir. 2007) (internal quotation marks omitted).

[4] *McDowell*, 498 F.3d at 312 (5th Cir. 2007) (internal quotation marks omitted).

[5] *United States v. Meza*, 701 F.3d 411, 422-23 (5th Cir. 2012).

[6] *United States v. Mendoza*, 522 F.3d 482, 489 (5th Cir. 2008).

[7] *United States v. Onick*, 889 F.2d 1425, 1429 (5th Cir. 1989).

No. 21-50642

Both Campos-Ayala and Moncada-De La Cruz moved for acquittal[8] at the close of the Government's evidence and neither renewed their motion at the close of all evidence.  Campos-Ayala did not introduce any evidence, and was therefore not required to renew his motion.[9]  His sufficiency of the evidence challenge is therefore reviewed de novo.[10]  Because Moncada-De La Cruz did introduce evidence, calling a witness to testify, the sufficiency of the evidence as to Moncada-De La Cruz is reviewed under the manifest miscarriage of justice standard.[11]

Under 21 U.S.C. § 841(a)(1) and (b)(1)(B), to sustain a conviction for the crime of possession of a controlled substance with intent to distribute, the Government must prove: "(1) knowledge, (2) possession, and (3) intent to distribute the controlled substance."[12]  Possession of a controlled substance "may be actual or constructive."[13]  A defendant has actual possession if he

---

[8] *See* Fed. R. Crim. P. 29.

[9] *United States v. Daniels*, 723 F.3d 562, 569 (5th Cir. 2013) ("We reject the Government's argument that the . . . defendants' challenges to the sufficiency of the evidence should be reviewed only for manifest miscarriage of justice . . . . [The defendants] did not need to renew their Rule 29 motions in order to preserve their challenges because they did not present evidence." (citing *United States v. Arias–Diaz*, 497 F.2d 165, 168-69 (5th Cir. 1974)).

[10] *Id.*

[11] *See United States v. Salazar*, 542 F.3d 139, 142 (5th Cir. 2008) ("[Defendant's] having failed to renew his motion for judgment of acquittal, we review his sufficiency-of-the-evidence challenge only for a manifest miscarriage of justice."); *see also United States v. Delgado*, 672 F.3d 320, 328-31 (5th Cir. 2012) (en banc) (reaffirming that the manifest miscarriage of justice standard applies to a forfeited claim of insufficient evidence).

[12] *United States v. Lopez-Monzon*, 850 F.3d 202, 206 (5th Cir. 2017).

[13] *United States v. McCowan*, 469 F.3d 386, 390 (5th Cir. 2006) (quoting *United States v. De Leon*, 170 F.3d 494, 496 (5th Cir. 1999)).

No. 21-50642

"knowingly has direct physical control over a thing at a given time."[14]  A defendant has constructive possession if he "had (1) ownership, dominion or control over the item itself or (2) dominion or control over the premises in which the item is found."[15]  In other words, "the government must establish [an] adequate nexus between the accused and the prohibited substance."[16] "Mere presence in the area where drugs are found is insufficient to support a finding of possession,"[17] and "we have not hesitated to reverse a conviction when the evidence has shown only that the defendant ran with bad company."[18]  "Ultimately, the determination of whether constructive possession exists is not a scientific inquiry, and the court must employ a common sense, fact-specific approach."[19]

Based on the available evidence,[20] the jury could not reasonably conclude Campos-Ayala or Moncada-De La Cruz possessed the marihuana with the intent to distribute it.  Moncada-De La Cruz's statement that he rearranged the bundles, while showing more than mere presence, does not establish an adequate nexus sufficient to enable a reasonable jury to find

––––––––––––––––––––––––––––

[14] *United States v. Meza*, 701 F.3d 411, 419 (5th Cir. 2012) (quoting *United States v. Munoz*, 150 F.3d 401, 416 (5th Cir. 1998)).

[15] *Id.*

[16] *United States v. Benbrook*, 40 F.3d 88, 94 (5th Cir. 1994) (citing *United States v. Rojas*, 537 F.2d 216 (5th Cir. 1976), *cert. denied*, 429 U.S. 1061 (1977)).

[17] *United States v. Cordova–Larios*, 907 F.2d 40, 42 (5th Cir. 1990) (citing *United States v. Ferg*, 504 F.2d 914, 917 (5th Cir. 1974)).

[18] *United States v. Sandoval*, 847 F.2d 179, 185 (5th Cir. 1988) (citing *United States v. Gardea Carrasco*, 830 F.2d 41 (5th Cir. 1987)).

[19] *Meza*, 701 F.3d at 419 (internal quotation marks and alterations omitted) (quoting *United States v. Wright*, 24 F.3d 732, 735 (5th Cir. 1994)).

[20] *Greer v. United States*, 141 S. Ct. 2090, 2098 (2021) ("This Court has repeatedly stated that an appellate court conducting plain-error review may consider the *entire* record—not just the record from the *particular proceeding* where the error occurred.").

possession.    Campos-Ayala's statements that he "just helped" and "understood" he was in possession after Agent Kettani explained the charges to him are similarly insufficient for a reasonable jury to find he possessed the marihuana.

## A

We first address the sufficiency of the evidence as to Moncada-De La Cruz.  We conclude that the jury could not reasonably find Moncada-De La Cruz's act of rearranging the bundles of marihuana so that he could fit inside the vehicle for the sole purpose of traveling further into the United States imputed to him ownership, dominion, or control over the marihuana.

Under this court's decisions, a defendant's mere presence in a vehicle in which drugs are found is insufficient to support a finding of constructive possession.[21]  We have found this to be the case even when the defendant may have known the vehicle was illegally transporting marihuana but was a passenger in the vehicle for the sole purpose of travelling further into the United States.[22]

---

[21] *United States v. Gordon*, 700 F.2d 215, 217 (5th Cir. 1983) (reversing defendant's conviction for possession of marihuana with intent to distribute where the defendant was only present in the vehicle with the drugs with no other evidence connecting him to drugs); *see also Cordova–Larios*, 907 F.2d at 42 ("Mere presence in the area where drugs are found is insufficient to support a finding of possession."); *Ferg*, 504 F.2d at 917 ("The facts of this case illustrate the logic of this 'mere presence' rule.  The government presents only two pieces of circumstantial evidence in an attempt to link Ferg with the seized marijuana. Ferg was traveling with Shaw, the person who admitted having purchased the marijuana, and Ferg was a passenger in the car in which the marijuana was concealed.  Beyond the admission by Ferg that he was a traveling companion of one guilty of illegal possession of marijuana, the government failed to establish that Ferg in any way violated 21 U.S.C. § 841(a)(1).").

[22] *See United States v. Moreno-Hinojosa*, 804 F.2d 845, 847 (5th Cir. 1986) ("Even if [the passenger] knew that [the driver] was making an illegal marihuana run, this fact would not be sufficient evidence to establish his possession without an additional showing

Here, arguably, there is more than mere presence because Moncada-De La Cruz rearranged the bundles so he could fit in the vehicle. However, common sense dictates that such an act, by itself, does not establish ownership, dominion, or control over another's item. In *United States v. Martinez*,[23] this court stated that "constructive possession is the ability to reduce an object to actual possession."[24] We concluded that the district court properly instructed the jury by providing the following example of constructive possession: "I have pencils on my desk in my chambers. My law clerk will go get them for me if I want them. . . . That's constructive possession."[25]

When this court has affirmed a finding of constructive possession under 21 U.S.C. § 841(a)(1), it has only been when there was substantially more circumstantial evidence connecting the defendant to the controlled substance. For example, in *United States v. Brito*,[26] this court concluded that the defendant had constructive possession based on "his ownership of the vehicle [transporting marihuana], his proximity to the vehicle on the day in question, and his failure to ever provide any explanation as to the purpose of his trip to the Big Bend area."[27] In *United States v. Rogers*,[28] this court

---

that he was riding in the truck to participate in the possession and distribution. The government did not make this additional showing even circumstantially beyond a reasonable doubt.").

[23] 588 F.2d 495 (5th Cir. 1979), *abrogation on other grounds recognized by United States v. Sandoval*, 615 F. App'x 242, 243 (5th Cir. 2015) (per curiam) (unpublished).

[24] *Id.* at 498.

[25] *Id.* at 498 & n.3.

[26] 136 F.3d 397 (5th Cir. 1998).

[27] *Id.* at 411.

[28] 719 F.2d 767 (5th Cir. 1983).

concluded there was "far more than mere presence" connecting the defendant to the marihuana because the defendant's "presence near the drug pick-up was . . . the effect of great effort and considerable expense on his part in promoting a long journey all but inexplicable for any other purpose, made chiefly in his own automobile, and ending with the capture of his associate in a load car over which he had dominion and had rented for no apparent purpose on the last leg of the journey."[29]  In *United States v. Cardenas*,[30] this court found constructive possession because the defendant "flew to Dallas from Miami for a brief visit[,] [h]e engaged in suspicious activities prior to his apprehension, [] he, along with the person seen driving him the previous day, was present in a room for over three-and-one-half hours where drugs and other incriminating evidence were in plain view[,] and [o]ther individuals arrived at this room, apparently for a meeting and a drug-related transaction."[31]  There is no equivalent evidence connecting Moncada-De La Cruz to the marihuana as in those cases.

The Government argues that the jury could reasonably conclude Moncada-De La Cruz's and Campos-Ayala's reentry into the car with knowledge that the driver was transporting marihuana indicated they had joined in the crime and possessed the marihuana in furtherance of their own ends of travelling further into the United States.  However, in *United States v. Moreno-Hinojosa*,[32] this court expressly rejected that same argument, reversing the defendant's § 841(a)(1) conviction on the basis of constructive

---

[29] *Id.* at 770-71 (internal quotation marks omitted).

[30] 748 F.2d 1015 (5th Cir. 1984).

[31] *Id.* at 1022.

[32] 804 F.2d 845 (5th Cir. 1986).

No. 21-50642

possession.[33]  In *Moreno-Hinojosa*, the defendant was a passenger in a "tractor-trailer rig" which he may have known was illegally transporting marihuana.[34] He caught a ride in the vehicle with a co-worker in order to find work elsewhere, and there was no evidence he asked to travel in the truck to participate in the possession and distribution of marihuana.[35] Likewise, even if Campos-Ayala and Moncada-De La Cruz knew the car was illegally transporting marihuana, that would be insufficient to support a finding they possessed the marihuana with the intent to distribute it by virtue of re-entering the vehicle after it had been loaded elsewhere with the contraband when there is no evidence they had any prior knowledge of the drug-trafficking scheme.[36]  The Government's argument falls short.

**B**

We next address the sufficiency of the evidence as to Campos-Ayala. We conclude that it would be unreasonable for the jury to conclude Campos-Ayala was in possession based solely on Campos-Ayala's statements that he "just helped" and "understood" he was in possession after Agent Kettani explained the charges to him.

First, it would be unreasonable for the jury to infer Campos-Ayala had possession with intent to distribute based on his statement to Agent Ramos that he "just helped."  Agent Ramos asked Campos-Ayala, "Why did you help with the drugs?" to which Campos-Ayala responded, "I didn't."  Agent

---

[33] *Id.* at 847.

[34] *Id.* at 846.

[35] *Id.* at 847.

[36] *Id.* ("Even if [the passenger] knew that [the driver] was making an illegal marihuana run, this fact would not be sufficient evidence to establish his possession without an additional showing that he was riding in the truck to participate in the possession and distribution.").

No. 21-50642

Ramos then asked, "Why did you cross with the drugs? to which Campos-Ayala responded, "I didn't, I just helped."  While it is unclear from this exchange what Campos-Ayala was referring to when he said he "helped," the Government invited the jury to infer that Campos-Ayala was saying he helped rearrange the bundles as did Moncada.  Because, as previously explained, such an act would not impute ownership, dominion, or control of the marihuana with intent to distribute, there was insufficient evidence for a reasonable jury to infer there was an adequate nexus connecting Campos-Ayala to the marihuana.[37]

Second, Campos-Ayala's statement made to DEA Agents after Agent Kettani explained the charges against him was not a confession.  Agents Kettani and Bustamante testified that Campos-Ayala said in Spanish slang that he was in possession of the marihuana, but it is clear from the testimony that both agents Kettani and Bustamante believed Campos-Ayala was "mak[ing] a statement that he *understood* what his charge was" after Agent Kettani explained the charges against him.  The statement, therefore, can most readily be taken to mean he comprehended that the officers were telling him his actions constituted possession.  In this context, it would be unreasonable for the jury to infer Campos-Ayala, in making the statement, was confessing to being caught in possession of the marihuana, particularly given the paucity of other evidence connecting Campos-Ayala to the marihuana.

Ultimately, the Government failed to offer evidence of anything more than Campos-Ayala and Moncada-De La Cruz being "just along for the

_____

[37] *See United States v. Onick*, 889 F.2d 1425, 1429 (5th Cir. 1989) (explaining the jury may not "pile inference upon inference to" find possession and must "limit itself to reasonable constructions of the evidence").

11

No. 21-50642

ride."[38]  The evidence connecting Moncada-De La Cruz and Campos-Ayala to the marihuana is insufficient to support a finding that Campos-Ayala and Moncada-De La Cruz had possession with intent to distribute.  Because to otherwise affirm the convictions on the basis of such tenuous evidence would be shocking,[39] and would amount to essentially "countenanc[ing] a conviction based on guilt by association,"[40] we are compelled to reverse the judgment of the district court and vacate the defendants' convictions.

\*    \*    \*

For the foregoing reasons we REVERSE and VACATE Campos-Ayala and Moncada-De La Cruz's convictions.

---

[38] *See United States v. Brito*, 136 F.3d 397, 411 (5th Cir. 1998); *see also Moreno-Hinojosa*, 804 F.2d at 847.

[39] *See United States v. Phillips*, 477 F.3d 215, 219 (5th Cir. 2007) (quoting *United States v. Avants*, 367 F.3d 433, 449 (5th Cir. 2004)).

[40] *United States v. Gordon*, 700 F.2d 215, 217 (5th Cir. 1983).

No. 21-50642

ANDREW S. OLDHAM, *Circuit Judge*, dissenting:

With all due respect to my esteemed and learned colleagues, sitting on, hugging, and otherwise being sandwiched between and under *283 pounds of marijuana* constitutes "possession" of it:



The defendants had "direct physical control" over the drugs they were literally holding, sitting on, and lying under. *Henderson v. United States*, 575 U.S. 622, 626 (2015). That, coupled with the extremely deferential standard of review, makes this a straightforward case. I respectfully dissent.

A jury found Campos-Ayala and Moncada-De La Cruz guilty of possession with intent to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). Such possession may be actual or constructive. *See United States v. Meyer*, 63 F.4th 1024, 1038 (5th Cir. 2023); *Nat'l Safe Deposit Co. v. Stead*, 232 U.S. 58, 67 (1914); 2A O'MALLEY, GRENIG & LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS, CRIMINAL § 39.12 (6th ed. 2023 update). Possession may also be joint among multiple parties. *See United States v. Ramos-*

*Cardenas*, 524 F.3d 600, 605 (5th Cir. 2008). Actual possession "occurs when a 'defendant knowingly has direct physical control over a thing at a given time.'" *United States v. Fields*, 977 F.3d 358, 365 (5th Cir. 2020) (quoting *United States v. Munoz*, 150 F.3d 401, 416 (5th Cir. 1998)); *see also Henderson*, 575 U.S. at 626. "Constructive possession is established when a person, though lacking such physical custody, still has the power and intent to exercise control over the object." *Henderson*, 575 U.S. at 626. It requires "some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband." *United States v. McCowan*, 469 F.3d 386, 390 (5th Cir. 2006) (quotation omitted). "In other words, constructive possession is the ability to reduce an object to actual possession." *United States v. Pigrum*, 922 F.2d 249, 255 (5th Cir. 1991) (quotation omitted). Thus, actual possession is "a more restrictive standard" than constructive. *United States v. Gaines*, 295 F.3d 293, 301 (2d Cir. 2002). Neither type of possession requires proof of legal ownership. *See Henderson*, 575 U.S. at 626.

Possession is easily established here. These defendants "knowingly ha[d] direct physical control over [the marijuana] at a given time," which shows actual possession. *Fields*, 977 F.3d at 365 (quotation omitted). Just look at the picture. The defendants were literally sitting on, under, and beside the marijuana. And the evidence supports "at least a plausible inference that the defendant[s] had knowledge of and access to the . . . contraband," which shows constructive possession. *McCowan*, 469 F.3d at 390 (quotation omitted).

The majority relays some of the evidence put on by the Government: "the defendants' close proximity to the drugs, Campos-Ayala's statement to Agent Kettani that he understood he was in possession of the bundles of marijuana, Campos-Ayala's statement to Agent Ramos that he helped, and Moncada-De La Cruz's statement that he helped rearrange the bundles so

that everyone could fit in the car." *Ante*, at 3. But the majority omits the most important piece of evidence: the fact that the officers discovered the defendants *actually holding* the contraband.

And let's be clear about how many cases we need to push aside to reach the majority's holding.

We have repeatedly held that physical control is sufficient to show possession. *See, e.g.*, *United States v. Ortiz*, 927 F.3d 868, 874 (5th Cir. 2019) (holding that a felon possessed a firearm when he held it briefly); *United States v. Hagman*, 740 F.3d 1044, 1049 (5th Cir. 2014) (surveying cases and finding that a defendant's mere fingerprint on a firearm or eyewitness testimony of a defendant holding it were sufficient to show actual possession); *United States v. De Leon*, 170 F.3d 494, 497 (5th Cir. 1999) (finding that a defendant's "thumbprint on the box of ammunition would also lead a jury to reasonably infer" that the defendant possessed it); *Munoz*, 150 F.3d at 416  (finding actual possession where an eyewitness saw the defendant "handle the sawed-off shotgun"); *United States v. Steen*, 55 F.3d 1022, 1032 (5th Cir. 1995) (finding possession of cocaine when the officer observed a white powder on the defendant's arms); *United States v. Ivy*, 973 F.2d 1184, 1188 (5th Cir. 1992) (holding that defendant actually possessed illegal narcotics when he took a package containing them and began to open it), *cert. denied*, 507 U.S. 1022 (1993); *United States v. Parker*, 566 F.2d 1304, 1306 (5th Cir. 1978) (holding a defendant possessed a gun when he held it for thirty minutes); *United States v. Tyler*, 474 F.2d 1079, 1081 (5th Cir. 1973) (per curiam) (holding that the jury could "draw an inference of actual possession from the presence of the [defendant's] fingerprint"); *see also United States v. Johnson*, 46 F.4th 1183, 1188–89 (10th Cir. 2022) (holding that a defendant actually possessed a firearm when he knowingly sat on it); *Gaines*, 295 F.3d at 301 (holding that where the evidence showed the defendant "*actually holding* the weapons in his hand," that "fact alone was

No. 21-50642

sufficient to allow a jury to find actual possession, however briefly it occurred"); *cf. United States v. Crain*, 33 F.3d 480, 486 (5th Cir. 1994) (finding no actual possession because the defendant "never touched" the item in the car); *United States v. Onick*, 889 F.2d 1425, 1429 (5th Cir. 1989) (similar).

Today the majority breaks with those cases.

This court has repeatedly held that passengers can be just as guilty of possession of contraband in a vehicle as owners. *See, e.g.*, *Crain*, 33 F.3d at 486 ("[W]hen two or more people are occupying a place, a defendant's control over the place is not by itself enough to establish constructive possession of contraband found there. We are especially reluctant to infer constructive possession of contraband by one occupant when there is evidence in the record explicitly linking the contraband to another occupant."); *United States v. Wright*, 24 F.3d 732, 735 (5th Cir. 1994) (similar); *United States v. Shabazz*, 993 F.2d 431, 441–42 (5th Cir. 1993) (holding that both driver and passenger-owner possessed drugs found in a hidden compartment); *United States v. Phillips*, 496 F.2d 1395, 1397–98 (5th Cir. 1974) (holding that passenger possessed marijuana in a vehicle he didn't own or rent even when marijuana was found in the trunk); *United States v. Canada*, 459 F.2d 687, 689 (5th Cir. 1972) (finding sufficient evidence of possession where passenger knew of the presence of contraband in the vehicle). For example, this court held in *United States v. Niver*, 689 F.2d 520 (5th Cir. 1982), that a passenger was not merely "hitching a free ride" and was instead guilty of possession with intent to distribute when the marijuana was in plain view and the passenger recognized it as marijuana. *Id.* at 530; *see also United States v. Whitmire*, 595 F.2d 1303, 1316 (5th Cir. 1979) (similar).

Today the majority breaks with those cases, too.

This court has repeatedly held that a mere admission of possession—like Campos-Ayala's admission here—is sufficient to establish possession. *See, e.g.*, *Hagman*, 740 F.3d at 1049; *United States v. Tovar*, 719 F.3d 376, 389 (5th Cir. 2013); *United States v. Cartwright*, 6 F.3d 294, 299 (5th Cir. 1993).

Again, today's majority breaks with those cases.

This court has repeatedly held that we must be *extremely deferential* to the jury when reviewing a sufficiency of the evidence challenge. *See, e.g.*, *United States v. Yusuf*, 57 F.4th 440, 444 (5th Cir. 2023); *United States v. Cabello*, 33 F.4th 281, 288 (5th Cir. 2022); *United States v. McNealy*, 625 F.3d 858, 870 (5th Cir. 2010). We cannot reweigh evidence, and we must defer to the jury's choice "among reasonable constructions of the evidence." *Ramos-Cardenas*, 524 F.3d at 605 (citing *United States v. Ibarra*, 286 F.3d 795, 797 (5th Cir. 2002)). We must "view[] the evidence in the light most favorable to the verdict and draw[] all reasonable inferences from the evidence to support the verdict." *United States v. Jimenez-Elvirez*, 862 F.3d 527, 533 (5th Cir. 2017) (quotation omitted); *see also United States v. Resio-Trejo*, 45 F.3d 907, 911 (5th Cir. 1995). "We do not consider whether the jury correctly determined innocence or guilt, but whether the jury made a rational decision." *United States v. Nolasco-Rosas*, 286 F.3d 762, 765 (5th Cir. 2002). And we must uphold the verdict even if the evidence does not "exclude every reasonable hypothesis of innocence." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982) (en banc).

Yet again, today's majority breaks with those cases too.

Finally, this court has repeatedly held that we must be *doubly deferential* to the jury verdict on plain error review of a sufficiency of the evidence challenge. *See Yusuf*, 57 F.4th at 445; *Cabello*, 33 F.4th at 288; *United States v. Delgado*, 672 F.3d 320, 330–31 (5th Cir. 2012) (en banc). The defendant must show "the record is *devoid of evidence* pointing to guilt or

[that] the evidence is so tenuous that a conviction is shocking." *Delgado*, 672 F.3d at 331 (quotation omitted). We reverse "only if there is a *manifest miscarriage of justice*." *Ibid*. (quotation omitted). This is "tantamount to the eye of a virtually impassable needle." *Yusuf*, 57 F.4th at 445. And even for Campos-Ayala's preserved challenge, we still must place "a heavy thumb on the scale in favor of the verdict." *Cabello*, 33 F.4th at 288.

You guessed it: Today's majority breaks with these cases too.

This is not a case of "mere presence." *Ante*, at 6–7. This is not a case where the defendants had mere knowledge that the driver possessed marijuana with intent to distribute. *Ante*, at 9–10 (citing *United States v. Moreno-Hinojosa*, 804 F.2d 845, 847 (5th Cir. 1986)). This is not a case where some marijuana was found in the trunk or a hidden compartment of the car. *Ante*, at 7 (citing *United States v. Gordon*, 700 F.2d 215, 217 (5th Cir. 1983); *United States v. Ferg*, 504 F.2d 914, 917 (5th Cir. 1974)).

This is a case where the defendants unloaded and re-loaded five bales stuffed with 283 pounds of marijuana into a vehicle, climbed into that very transport car, held that marijuana in their immediate physical control as they drove, and admitted to officers that they knew they were holding marijuana. A rational jury could easily infer from this evidence that the defendants exercised "direct physical control" over the contraband so we must defer to its verdict. *Fields*, 977 F.3d at 365 (quotation omitted). In fact, only an irrational jury could look at the picture on the first page of this dissent and conclude that holding marijuana is not possession of it.

I respectfully dissent.