

# Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00773-CR

Dawud **ABDULLAH**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 156th Judicial District Court, McMullen County, Texas
Trial Court No. M-22-0022-CR-B
Honorable Walden Shelton, Judge Presiding

Opinion by:     Beth Watkins, Justice

Sitting:        Luz Elena D. Chapa, Justice
                Beth Watkins, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: August 14, 2024

AFFIRMED AS MODIFIED

Dawud Abdullah appeals his three convictions for smuggling of persons under 18 years of age. He raises complaints about the constitutionality of the smuggling statute, the denial of his motion to suppress, the admission of hearsay, the sufficiency of the evidence, and the enhancements to and constitutionality of his sentence. We affirm but sua sponte reform the judgment to conform with the jury's verdict.

**BACKGROUND**

On May 7, 2022, around 11:45 p.m., McMullen County Sheriff's Deputy John Cozad was on patrol monitoring traffic in front of the county courthouse in Tilden. Cozad saw a U-Haul box truck traveling on Highway 16, but he could not clearly read its license plate, so he initiated a traffic stop. As he approached the U-Haul on foot, he saw that it had an Arizona plate. When the driver, Abdullah, partially rolled down his window, Cozad thought he smelled marijuana. He asked Abdullah what he was doing and where he was going. Abdullah said he was on his way from Laredo to San Antonio with some of his grandfather's belongings. Cozad asked if he could look in the U-Haul; Abdullah declined. Cozad collected Abdullah's Nebraska driver's license, performed a computer check on it, and found it had been canceled or revoked. Cozad instructed Abdullah to step out of the U-Haul and handcuffed him. Neither of the passengers in the cab had driver's licenses, so Cozad placed them in handcuffs as well.

Deputy Edward Guajardo responded to the scene and spoke to the two passengers in Spanish. They told him they were from Guatemala and had been in the United States "a couple of days . . . in the brush." Guajardo asked if anyone was in the cargo area of the U-Haul and the larger of the two passengers responded "oh, yeah." Guajardo asked if there were "more than ten" and he again replied "oh, yeah." Meanwhile, Deputy Robert Gonzales arrived with his drug-detecting dog and performed an open-air sweep for narcotics. The dog did not alert for narcotics, but she exhibited a change of behavior, showing interest in something inside the U-Haul. Deputy Norman Garza drove the U-Haul to a weigh station four miles south of Tilden because that area was well lit, off the roadway, and secured by fencing.

Border Patrol Supervisor Javier Carrillo dispatched agents to the weigh station, and agents and deputies discovered thirty-two passengers in the back of the U-Haul. Border Patrol agents determined that all the passengers in the U-Haul were "in the US illegally," so they transported

them to the Border Patrol checkpoint in Freer. Carrillo wrote a report on all thirty-four individuals—the two passengers in the cab of the U-Haul and the thirty-two passengers in the back—for Border Patrol. According to Carrillo, three passengers in the back self-reported that they were juveniles—M.G.S.C. said he was a Guatemalan citizen under age 18, and J.V.P. and A.H.H. said they were Mexican citizens under the age of 18.[1]

The State charged Abdullah with thirty-one counts of third-degree smuggling of adults and three counts of second-degree smuggling of juveniles. TEX. PENAL CODE ANN. §§ 20.05(a)(1)(A), 20.05(b)(1)(B). Each count alleged that Abdullah used a motor vehicle to transport the individual with intent to conceal them from a peace officer. TEX. PENAL CODE § 20.05(a)(1)(A). Abdullah sought and obtained a severance of the second-degree felonies from the third-degree felonies. The parties then went to trial on the second-degree counts. The jury convicted Abdullah and he elected for the trial court to assess punishment. The trial court found two enhancements true, and sentenced Abdullah to thirty-five years in prison. He appeals.

## ANALYSIS

### *Constitutionality of Texas Penal Code Section 20.05*

Abdullah first argues that the statute under which he was convicted, Texas Penal Code section 20.05(a)(1)(A), is unconstitutional because it is field and conflict-preempted by the federal smuggling and harboring statute, 8 U.S.C. section 1324. He also argues the statute is unconstitutionally vague and ambiguous because it fails to define "conceal from a peace officer."[2]

---

[1] To protect the privacy of the alleged juveniles, we identify them by initials.

[2] As a general rule, arguments like these—facial challenges to the constitutionality of a statute—cannot be raised for the first time on appeal. *Smith v. State*, 463 S.W.3d 890, 896 (Tex. Crim. App. 2015); *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009). Abdullah did not raise a vagueness challenge below but, as the State notes, he raised a preemption complaint within his motion to quash. In the interest of justice, we will assume without deciding that Abdullah preserved the preemption issue.

Less than one month after Abdullah's trial concluded, we handed down our opinion in *State v. Flores*, 679 S.W.3d 232 (Tex. App.—San Antonio 2023, pet. ref'd). In that case, we reviewed and rejected nearly identical challenges to Texas Penal Code section 20.05(a)(1)(A). In overruling the preemption challenge, we held, "[t]he statute, as written, does not regulate immigration, was not enacted contrary to the clear and manifest purpose of Congress to occupy the field, and does not operate as an obstacle to the accomplishment of the purposes of Congress." *Id*. at 247. And in rejecting the vagueness arguments, we held, "[e]ven if the outermost boundaries of the statute 'may be imprecise, any such uncertainty has little relevance here, where [the captured] conduct falls squarely within the "hard core" of the statute's proscriptions[.]'" *Id*. at 251 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 608 (1973)). For the reasons articulated in *Flores*, we overrule Abdullah's complaints about the facial constitutionality of the statute.

### *Denial of Motion to Suppress*

In his second issue, Abdullah argues the trial court erred in failing to grant his motion to suppress evidence because the evidence was the fruit of an illegal and unreasonably prolonged traffic stop.

### *Applicable Law and Standard of Review*

"In the context of a traffic stop, police officers are justified in stopping a vehicle when the officers have reasonable suspicion to believe that a traffic violation has occurred." *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018). "During a traffic stop the officer may request certain information from a driver, such as the driver's license, vehicle registration, and proof of insurance, and run a computer check on that information." *Id*. "An officer is also permitted to ask drivers and passengers about matters unrelated to the purpose of the stop, so long as the questioning does not measurably extend the duration of the stop." *Id*. Generally, an officer's authority for a traffic stop "ends when tasks tied to the traffic infraction are—or reasonably should have been—completed."

*Rodriguez v. United States*, 575 U.S. 348, 354 (2015). "Once the computer check is completed, and the officer knows that the driver has a current valid license, no outstanding warrants, and the car is not stolen, the traffic stop investigation is fully resolved." *Lerma*, 543 S.W.3d at 191. But "if an officer develops reasonable suspicion that the driver or an occupant of the vehicle is involved in criminal activity the officer may continue questioning the individual regardless of whether the official tasks of a traffic stop have come to an end." *Id*.

"We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review." *Id*. at 189–90. "[W]e afford almost complete deference to the trial court in determining historical facts [but] review *de novo* whether the facts are sufficient to give rise to reasonable suspicion in a case." *Id*. at 190. If the trial court makes a finding of fact that is derived from video evidence admitted at a suppression hearing, that finding "is still reviewed under a deferential standard." *Carter v. State*, 309 S.W.3d 31, 40 & n.47 (Tex. Crim. App. 2010).

*Application*

Abdullah challenges both the initiation and duration of the traffic stop.

**Initiation of the traffic stop.** At the pretrial hearing on the motion to suppress, Cozad testified he initiated the traffic stop of the U-Haul because he was "unable to make out what state it was from." Although Cozad had previously written a report providing that a license plate frame blocked the state name, at the hearing, he admitted that was a mistake. The Texas Transportation Code provides that a person commits an offense by displaying a license plate that "has blurring or reflective matter that significantly impairs the readability of the name of the state in which the vehicle is registered"; "has . . . insignia that is not authorized by law and that interferes with the readability of . . . the name of the state in which the vehicle is registered;" or "has a coating, covering, protective substance, or other material that . . . obscures one-half or more of the name of the state in which the vehicle is registered[.]" *See* TEX. TRANSP. CODE ANN. § 504.945(a)(5)–(7).

At the motion to suppress hearing, Abdullah argued the license plate had no such blurring or insignia or coating, as proved by Defense's Exbibit 2—a photograph of the license plate.

Cozad agreed the license plate number and state were clear in the photograph but noted that the photograph "seems to have been taken in a well-lit area and like maybe a foot away from the bumper." In contrast, in State's Exhibit 1, the dash-cam video from Cozad's patrol truck, the license plate number and state did not become clear until Cozad parked behind the U-Haul. The State argued the lack of visibility constituted a violation of another section of the code, which requires "[a] taillamp or a separate lamp [to] be constructed and mounted to emit a white light that: (1) illuminates the rear license plate; and (2) makes the plate clearly legible at a distance of 50 feet from the rear." *See* TEX. TRANSP. CODE ANN. § 547.322(f). The trial court agreed with the State that the traffic stop was objectively reasonable and made the following oral findings:

- "the license plate was not readily observable at the place and time where the stop took place 11:30-11:45 p.m. out on a lonely highway where there are no lights other than those provided by the vehicles that are out there";

- "even the numbers are not readily observable until you get within just a few feet"; and

- "in Defense Exhibit No. 2, even close up during the daylight a couple feet away the State indicated at the top of the plate is distorted . . . not in its usual or intended condition . . . even though it's not covered, you can't necessarily, without close inspection, tell what state that is."

The trial court made similar written findings. The record supports these findings, and we therefore afford great deference to them. *Tucker v. State*, 369 S.W.3d 179, 184 (Tex. Crim. App. 2012). These findings, in turn, support "a legal conclusion that there existed at least a reasonable suspicion that a traffic infraction had occurred." *State v. Elias*, 339 S.W.3d 667, 675 (Tex. Crim. App. 2011). The objective facts support a detention for some violation of the Texas Transportation Code—

section 504.945(a)(5), (6) or (7) or section 547.322(f). TEX. TRANSP. CODE §§ 504.945(a)(5)–(7), 547.322(f).

**Duration of the traffic stop.** After he made the stop, Cozad approached the driver's window and said that he had stopped Abdullah because he could not read the U-Haul's license plate. He asked for Abdullah's driver's license before asking three questions—"Where are you coming from tonight?"; "Where's your hotel at?"; and "What do you have in the van?"—unrelated to the purpose of the stop. Abdullah answered the questions then Cozad asked, "Mind if I take a look in the back of the van real quick?" Abdullah declined and Cozad walked back to his patrol truck with Abdullah's driver's license. Cozad was at the driver's window for approximately seventy seconds. His questioning did not "measurably extend the duration of the stop." *Lerma*, 543 S.W.3d at 190.

After returning to his truck, Cozad called dispatch to verify the license plate. He also asked for back-up, explaining "there were three people in the vehicle and I was out there by myself." In addition, he knew a nearby social event was scheduled to end at midnight and "[t]here would be a lot of traffic. . . . So just in case the vehicle was stolen or decided to take off, I was trying to make sure it was as safe as I could for the public." He continued attempting to run the license plate through his computer but made mistakes inputting the information. When Deputy Ables arrived about nine minutes into the stop, Cozad reported he could not confirm that the U-Haul had a valid license plate, and that "something was going on" because Abdullah would not consent to him looking in the U-Haul. He asked Ables to call the K9 officer. He then entered Abdullah's driver's license in his computer correctly and learned that it had been canceled. Around thirteen minutes into the stop, Cozad again asked dispatch to run the U-Haul's Arizona license plate and Abdullah's Nebraska driver's license. Dispatch then reported the Arizona plate was valid, but the Nebraska license had been cancelled. Around seventeen minutes into the stop, Cozad returned to the driver's

side window and instructed Abdullah to step out, telling him his Nebraska driver's license was cancelled. Cozad learned that neither of the cab passengers had driver's licenses.

At the hearing, Abdullah argued Cozad's mistakes in running the plate were not objectively reasonable, but the trial court found otherwise. It orally found:

> that the continued failure to get the correct response both from inside the patrol unit and eventually from the dispatcher was not an unreasonable delay, and certainly by the time it appears that the license plate was sorted out there was a determination about the driver's license having been canceled.

Again, the trial court made a similar written finding. And again, because the record supports this finding, we afford it great deference. *Tucker*, 369 S.W.3d at 184. Regardless of the timing and efficacy of the canine's alert, Cozad had reasonable suspicion to prolong the traffic stop because neither Abdullah nor the passengers had a valid driver's license and therefore could not legally drive the U-Haul away. Even if Cozad was acting, as he stated, because "we weren't getting the full story," the objective facts supported his continued detention of Abdullah and further need to control the scene. *See Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017) (in determining whether reasonable suspicion to continue detention exists, courts disregard subjective motives of arresting officer and instead look to objective facts).

Abdullah last argues the jury erred in finding that the traffic stop was proper. The trial court charged the jury as follows: "Before you may consider the evidence obtained as a result of Deputy John Cozad's stop and detention of Dawud Abdullah, you must all agree that the state has proven, beyond a reasonable doubt, that Deputy John Cozad reasonably believed the license plate of the vehicle in question was not clearly legible at a distance of 50 feet from the rear of the vehicle before Deputy John Cozad stopped him." We have already found that the evidence supports such a finding. We therefore overrule Abdullah's second issue.

### *Admission of Evidence of Age and National Origin*

In his third issue, Abdullah asserts the trial court improperly admitted evidence regarding the age and national origin of the passengers in the U-Haul. He urges constitutional and non-constitutional barriers to admission, including that the evidence was inadmissible hearsay, unauthenticated, and testimonial. He also asserts that evidence of the severed third-degree counts was inadmissible extraneous evidence. The State asks that we not reach this issue because it is: (1) multifarious and not properly briefed; and (2) not properly preserved. Because Abdullah separated the types of evidentiary complaints by heading, we do not consider this a single multifarious issue. But we agree that Abdullah failed to preserve most of these evidentiary complaints.

### *Motion in Limine Did Not Preserve Error*

On January 23, 2023, Abdullah filed a motion to exclude testimony of "the identity, alienage, national origin, ethnicity, or documented immigration of any person who was not available for cross-examination or subject to confrontation by the defense." That motion cited Rules of Evidence 103(c), 104(c), 702, 801, 802, and the common law. Although entitled a motion to exclude, it asked that the State be required to approach the bench before offering the evidence—it did not seek to exclude the evidence altogether. Abdullah does not point us to a ruling on that motion. But even if it had been denied, such a ruling would not have preserved the error Abdullah raised on appeal. *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008) ("For error to be preserved with regard to the subject of a motion *in limine*, an objection must be made at the time the subject is raised during trial.").

### *Trial Objection Preserved Error on Confrontation Grounds, but Abdullah Obtained the Relief Requested*

On February 13, 2023, Abdullah filed a motion to exclude from evidence law enforcement photographs of the passengers holding cards listing their countries of origin, dates of birth, and

names. After jury selection, Abdullah urged this motion, arguing that the evidence was inadmissible hearsay under *Elsik v. State*, 678 S.W.3d 360, 367 (Tex. App.—San Antonio 2023, pet. granted). He also argued its introduction would violate his confrontation rights if the State failed to call the alleged juveniles to testify. The trial court did not make a ruling at that time. *See* TEX. R. APP. P. 33.1(a)(2).

At trial, the State offered photographs of the alleged juveniles holding cards containing this information. Abdullah objected to the information on the cards but not to the photographs themselves, arguing, "[i]f Deputy Garza wants to testify that he saw these three individuals that came out of the vehicle, we don't have an objection to their photos if that is perhaps his testimony. But as far as the . . . testimonial evidence regarding the information on these placards, that is our objection specifically." After the State redacted the name, birthdate, and country of origin information, the trial court admitted the three photographs into evidence. Abdullah received the relief he requested. He therefore has nothing to complain of on appeal. *Cook v. State*, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993).

*Ruling Outside the Jury's Presence Preserved Objection to Same-Transaction Contextual Evidence; the Trial Court Did Not Abuse Its Direction in Admitting It*

On June 5, 2023, the Honorable Janna K. Whatley held a pretrial hearing at which Abdullah moved to "to exclude out evidence pertaining to the other counts for the purposes of extraneous 404(b)." The trial court denied the motion. When Abdullah re-urged the motion on the day of jury selection, the State referred to that ruling and the Honorable Walden E. Shelton, who presided over the trial, maintained Judge Whatley's ruling. "When the court hears a party's objections outside the presence of the jury and rules that evidence is admissible, a party need not renew an objection to preserve a claim of error for appeal." TEX. R. EVID. 103(b). Therefore, Abdullah preserved his

Rule 404(b) argument. But, for the reasons explained below, we agree with the trial court that the evidence was admissible.

"Evidence of a crime, wrong, or act other than the offense charged is not admissible to prove that the defendant acted in conformity with his character but may be admissible for other purposes." *Inthalangsy v. State*, 634 S.W.3d 749, 756 (Tex. Crim. App. 2021); TEX. R. EVID. 404(b). "These purposes include proving intent and motive as well as illustrating other aspects of an 'indivisible criminal transaction,' also known as same-transaction contextual evidence." *Inthalangsy*, 634 S.W.3d at 756. "Same-transaction contextual evidence illuminate[s] the nature of the crime alleged." *Id*. (internal quotation marks omitted). "The jury is entitled to know all relevant surrounding facts and circumstances of the charged offense." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). "But, under Rule 404(b), same-transaction contextual evidence is admissible only when the offense would make little or no sense without also bringing in that evidence, and it is admissible only to the extent that it is necessary to the jury's understanding of the offense." *Id*. (internal quotation marks omitted). "Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court." *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). And "a trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse-of-discretion standard." *Devoe*, 354 S.W.3d at 469.

At the pre-trial hearing, the State argued "first and foremost, that's all same case contextual. It is impossible. They are all contained in the same vehicle. There is no way to not have evidence of the other people." The State also argued the evidence was relevant to Abdullah's intent. The trial court overruled Abdullah's Rule 404(b) objection, noting, "the State's position is this is all one occurrence." The trial court acted within its discretion in finding the severed third-degree offenses to be contextual evidence because "the charged offense would make little sense without

the extraneous offenses." *Id*. at 470. The evidence of the second-degree acts involving the juveniles was physically inseparable from the evidence of the third-degree acts involving the adults. The primary evidence supporting the offense—video footage of the passengers exiting from the U-Haul at the weigh station—was same-transaction contextual evidence. This evidence was "admissible to show the context in which the criminal act occurred." *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).

*Objection During Deputy Guajardo's Trial Testimony Preserved a Hearsay Complaint; the Trial Court Did Not Abuse Its Discretion in Overruling It*

When Guajardo testified that the passengers in the cab said they were from Guatemala, Abdullah objected on hearsay grounds. The State argued this evidence was not offered for its truth but as the reason Guajardo asked Abdullah if there was anyone in the back of the truck. The trial court overruled the objection. We review the trial court's ruling on a hearsay objection for an abuse of discretion and are required to affirm the trial court's decision unless it "was so clearly wrong as to lie outside the zone within which reasonable people might disagree." *See Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). Statements offered for the purpose of explaining why an officer acted in a certain way but not for the truth of the matter asserted are not hearsay. *West v. State*, 406 S.W.3d 748, 764 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Because the trial court's decision fell within the bounds of reasonable disagreement, we do not disturb its ruling. *Taylor*, 268 S.W.3d at 579.

*Inconsistent Objections During Carrillo's Trial Testimony Did Not Preserve Abdullah's Remaining Appellate Complaints*

Without objection, Carrillo testified that: (1) in general, when Border Patrol agents encounter Mexican citizens under the age of 18 who the agents suspect of entering the United States illegally, agents transfer those juveniles to the Mexican consulate; (2) A.H.H. identified herself as a Mexican citizen under the age of 18, and agents transferred her to the Mexican

consulate; and (3) agents also transferred J.V.P. to the Mexican consulate. Abdullah therefore forfeited any complaints about the admission of A.H.H.'s statements. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998).

After the State asked Carrillo why agents transferred J.V.P. to the Mexican consulate, Abdullah objected that the State had not laid a proper foundation or proved that Carrillo had actual knowledge of the facts being asserted. Abdullah ultimately questioned Carrillo on voir dire, and he testified he determined ages based on what the individuals told him. He also testified he had no personal recollection of the three alleged juveniles in the case. Abdullah then objected on relevance and personal knowledge grounds. The State argued that Carrillo was the supervisor in charge, and he wrote a report from which he could refresh his recollection. Abdullah moved "to strike his testimony further as a witness who can provide information." The trial court overruled that motion.

On appeal, Abdullah asserts he "[i]n essence . . . objected to admission of the Border Patrol Records under Texas Rule of Evidence 901." It is unlikely Abdullah's relevance (Rule 402) and personal knowledge (Rule 602) objections would have placed the trial court on notice of a Rule 901 complaint. *See Gibson v. State*, 541 S.W.3d 164, 166 (Tex. Crim. App. 2017) (trial objection must comport with appellate argument). But even assuming they did, Rule 901 provides: "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901. Here, the records themselves were not admitted. We therefore overrule Abdullah's Rule 901 argument.

Direct examination continued, and Carrillo testified that agents transferred J.V.P. to the Mexican consulate because he said he was a juvenile and a Mexican citizen. Abdullah objected on hearsay grounds and the trial court overruled the objection. Carrillo next testified that M.G.S.C. identified himself as a juvenile citizen of Guatemala. Abdullah did not object when Carrillo

provided this testimony or when Carrillo then referred to his report and testified that the birthdates given by the three alleged juveniles were "consistent with being under the age of 18." While Abdullah may have initially preserved a hearsay objection to J.V.P.'s statements, he waived that objection by failing to object when this evidence was subsequently repeated. *Martinez*, 98 S.W.3d at 193.

And, given that Carrillo's testimony from his report that the birthdates of A.H.H., J.V.P., and M.G.S.C. were consistent with their being under the age of 18, any error in the admission of the prior objected-to hearsay from J.V.P. was forfeited by Abdullah's failure to continue to object on those grounds. *Id.* (error admitting evidence waived where defendant failed to continue to object, obtain running objection, or request hearing outside presence of jury on admissibility).

We therefore overrule Abdullah's evidentiary complaints.

### *Sufficiency*

In his fourth issue, Abdullah argues the evidence was insufficient to support his convictions because the State neither proved he concealed persons, nor that the persons allegedly concealed were under the age of 18.

#### *Applicable Law and Standard of Review*

We review a challenge to the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). Under that standard, we examine all the evidence in the light most favorable to the verdict and resolve all reasonable inferences from the evidence in the verdict's favor to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015). "[N]o evidence is ignored because the standard requires a reviewing court to view all of the evidence in the light most favorable to the verdict." *Cary v. State*, 507 S.W.3d 750, 759 n.8 (Tex. Crim. App.

2016) (internal quotation marks and emphasis omitted). "An appellate court cannot act as a thirteenth juror and make its own assessment of the evidence." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). Rather, "[a] court's role on appeal is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Id*. This rationality requirement is a key and explicit component of the *Jackson* sufficiency standard. *See Jackson*, 443 U.S. at 319.

*Application*

Section 20.05 of the Texas Penal Code provides, "(a) A person commits an offense if the person knowingly: (1) uses a motor vehicle . . . to transport an individual with the intent to: (A) conceal the individual from a peace officer[.]" TEX. PENAL CODE § 20.05(a)(1)(A). If the "smuggled individual is a child younger than 18 years of age at the time of the offense," the offense is "a felony of the second degree[.]" TEX. PENAL CODE § 20.05(b)(1)(B).

**Intent to Conceal.** Abdullah first argues the deputies were able to observe the two passengers in the cab and "arguably there was no evidence the back passengers were hiding, as there were no covered windows, nor were there boxes, for example, used for concealment." Abdullah refers to the language in section 20.05(a)(2) requiring proof of harboring a non-citizen and the Fifth Circuit's holding, in *Cruz v. Abbott*, 849 F.3d 594, 599 (5th Cir. 2017), that harboring requires "some level of covertness." But Abdullah was prosecuted under section 20.05(a)(1)(A), which does not contain a harboring element. Furthermore, the State presented evidence of a level of covertness that would allow the jury to reasonably find that Abdullah possessed an intent to conceal the three alleged juveniles. First, he transported them in the cargo hold of a U-Haul. Someone had cut a hole in the roof of the cargo hold for ventilation because it had no windows. Second, when Cozad asked what Abdullah was transporting in the cargo hold, he gave a false story that he was transporting some of his deceased grandfather's possessions to his mother, indicating a consciousness of guilt. *Hargrove v. State*, 211 S.W.3d 379, 387 (Tex. App.—San Antonio 2006,

pet. ref'd) (giving false name can indicate consciousness of guilt). These facts allowed a rational trier of fact to find beyond a reasonable doubt that he acted with an intent to conceal at least those passengers in the back of the U-Haul—including the three alleged juveniles—from detection by law enforcement. *See United States v. Yusuf*, 57 F.4th 440, 445–46 (5th Cir. 2023) (fact that defendant was sole driver of truck in the trailer of which eighty-four non-citizens were discovered probative of knowledge of hauling non-citizens); *United States v. Barron-Cabrera*, 119 F.3d 1454, 1461 (10th Cir. 1997) (noting utility of moving truck as smuggling vehicle because it is designed to carry heavy cargo in a windowless trailer; "its cargo may be concealed without the use of 'concealed compartments'"). We therefore conclude sufficient evidence supports the finding that Abdullah intended to conceal the passengers in the back of the U-Haul.

**Juvenile Status.** Abdullah next argues that only inadmissible hearsay supports the element that the "smuggled individual is a child younger than 18." As discussed above, Carrillo referred to his report and testified that the dates of birth given by the three alleged juveniles were "consistent with being under the age of 18."

In assessing the sufficiency of the evidence to support a conviction, a reviewing court must consider all evidence "which the jury was permitted, whether rightly or wrongly, to consider." *Moff v. State*, 131 S.W.3d 485, 488 (Tex. Crim. App. 2004); *Thomas v. State*, 753 S.W.2d 688, 695 (Tex. Crim. App. 1988). Moreover, the State presented photographs of the alleged juveniles, all of whom were found in the windowless back of the U-Haul. All three look like teenagers. These facts allowed a rational trier of fact to find beyond a reasonable doubt that Abdullah transported, with intent to conceal, three juvenile passengers. *Jackson*, 443 U.S. at 319; *Yusuf*, 57 F.4th at 445; *Barron-Cabrera*, 119 F.3d at 1461. We therefore overrule Abdullah's sufficiency arguments.

*Enhancements*

In his fifth issue, Abdullah argues his "[h]abitual felon enhancement was improper because one of his old felony convictions used for enhancement occurred when he was 15 years old and the other was for possession with intent to deliver marijuana for a prison term of only one year, which is the equivalent of a state jail felony."

*Applicable Law and Standard of Review*

If the defendant has previously been finally convicted of two felony offenses that are not Texas state jail felonies, section 12.42 of the Texas Penal Code allows a punishment to be enhanced, as a habitual offender, to a term of 25–99 years. TEX. PENAL CODE ANN. § 12.42(d); *Ex parte Pue*, 552 S.W.3d 226, 235 (Tex. Crim. App. 2018) (determination of whether defendant has been "finally convicted" for enhancement purposes under section 12.42 is made in accordance with Texas law). "The State establishes a prima facie case of proof of a prior conviction by introducing copies of the judgment and sentence in each case used for enhancement and connecting them with the defendant." *Johnson v. State*, 725 S.W.2d 245, 247 (Tex. Crim. App. 1987). Once the State establishes a prima facie case, regularity in the judgment is presumed. *Id*. "The burden then shifts to the defendant, who must make an affirmative showing of any defect in the judgment[.]" *Id*.

Section 12.41 provides a mechanism to categorize "any conviction not obtained from a prosecution under" the Texas Penal Code. TEX. PENAL CODE ANN. § 12.41. It "governs how offenses committed outside of this state are classified for enhancement purposes." *State v. Richardson*, 439 S.W.3d 403, 404 (Tex. App.—Fort Worth 2014, pet. ref'd). If imprisonment in a penitentiary is affixed to the offense as a possible punishment, the out-of-state offense is considered a Texas felony of the third degree. TEX. PENAL CODE § 12.41(1). And an out-of-state

offense is considered a Texas Class B misdemeanor if it "is not a felony and confinement in a jail is affixed to the offense as a possible punishment." *Id*. § 12.41(2).

*Application*

**Georgia Conviction.** Abdullah first argues his 2002 Georgia armed robbery adjudication could not be used for enhancement under section 12.42(d) because it occurred when he was a juvenile, and while section 12.42(f) classifies juvenile adjudications as final felony convictions for purposes of other repeat offender enhancements, it does not do so for habitual enhancement under section 12.42(d). TEX. PENAL CODE § 12.42.

The State introduced a "pen packet" containing a judgment, sentence, and fingerprints which were connected to Abdullah at trial. The pen packet reflects that Abdullah was 15 years old when he committed the armed robbery offense, but he pled guilty in a negotiated plea in the Superior Court of Clayton County, Georgia and was sentenced to ten years' confinement in the Georgia State Prison System. *See* GA. CODE ANN., § 16-8-41 (armed robbery); GA. CODE ANN., § 15-11-561 (giving juvenile court discretion to transfer a case to superior court for criminal trial if, in part, juvenile "[w]as at least 15 years of age at the time of the commission of the offense and committed an act which would be a felony if committed by an adult"). Because the State established a prima facie case of proof of a prior conviction for enhancement purposes by introducing copies of the judgment and sentence, the burden shifted to Abdullah to make an affirmative showing of a defect in the judgment. *Johnson*, 725 S.W.2d at 247. An example of a potential defect in the judgment in circumstances like these would be the lack of a valid juvenile court transfer order. *See id*. But Abdullah made no such showing. *See id*. In fact, he only objected that the Georgia enhancement had not been included in the original indictment, which is not a defect in the judgment. We therefore overrule Abdullah's complaint about the Georgia enhancement.

**Nebraska Conviction.** Abdullah next argues that because article 12.42(d) does not allow enhancement with a state jail felony and his Nebraska conviction was the equivalent of a Texas state jail felony, it could not be used for enhancement. TEX. PENAL CODE § 12.42. Abdullah's Nebraska conviction—possession with intent to distribute marijuana—was classified as a Class III felony. After a no contest plea, he was sentenced to imprisonment in an institution under the jurisdiction of the Nebraska Department of Correctional Services for a period of one year. At a pretrial hearing, Abdullah testified that he spent 241 days in county jail and never reported to the penitentiary.

Under Nebraska law at the time of Abdullah's offense, Class III felonies were punishable by up to twenty years' imprisonment, a $25,000 fine, or both, with a minimum penalty of one year imprisonment. NEB. REV. STAT. ANN. § 28–105(1) (West 2014). In Texas, although Texas Health and Safety Code section 481.121 establishes the offense of possession of marijuana, and section 481.120 establishes the offense of delivery of marijuana, there is no statute establishing an offense for possession of marijuana with intent to deliver. In Texas, depending upon the aggregate weight of the marijuana possessed or delivered, these offenses can be: a Class A misdemeanor, a Class B misdemeanor, a state jail felony, a second-degree felony, or a first-degree felony. TEX. HEALTH & SAFETY CODE §§ 481.121, 481.120. Under Nebraska law, Abdullah's prior offense carried penitentiary time as a possible punishment. Therefore, under the laws of Texas, Abdullah's Nebraska conviction can be used to enhance a felony offense as if it were a third-degree felony, regardless of what classification the crime would have been had it been committed in Texas, and regardless of whether Abdullah served his sentence in the penitentiary. *See Ex parte Blume*, 618 S.W.2d 373, 376 (Tex. Crim. App. 1981) (construing section 12.41; relevant consideration is whether confinement in penitentiary is possible punishment for sister state or federal offense); *Lee*

- 19 -

*v. State*, 582 S.W.3d 356, 365 (Tex. App.—San Antonio 2018, pet. ref'd); *Biggers v. State*, 634 S.W.3d 244, 251 (Tex. App.—Texarkana 2021, pet. ref'd).

We therefore overrule Abdullah's enhancement complaints.

### *Cruel and Unusual Punishment*

In his final issue, Abdullah argues his thirty-five-year sentence for smuggling of persons under 18 years of age, with a habitual felony enhancement, was grossly disproportionate to the offense in violation of the Eighth Amendment.

Abdullah made no Eighth Amendment objection to his sentence when it was pronounced. Nor did he file any post-trial motions or objections raising Eighth Amendment objections to his sentence. To preserve error for appellate review, a party must present a timely objection to the trial court, state the specific grounds for the objection, and obtain a ruling. TEX. R. APP. P. 33.1(a). Barring "narrow exceptions, all errors—even constitutional errors—may be forfeited on appeal if an appellant failed to object at trial." *Garza v. State*, 435 S.W.3d 258, 260–61 (Tex. Crim. App. 2014).

Abdullah cites *Garza* for the proposition that the right to fair punishment is an absolute constitutional right which cannot be forfeited by inaction. It is true that in *Garza*, the Court of Criminal Appeals held Garza's Eighth Amendment claim was not subject to procedural default. *Id*. at 262–63. But Garza was a juvenile, and he had received a categorically barred sentence— mandatory life imprisonment without the possibility of parole. *See Miller v. Alabama*, 567 U.S. 460, 479 (2012) (holding the Eighth Amendment "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders"). *Garza* "was directed at the particular type of claim at issue there and does not broadly apply to all Eighth Amendment 'individualized sentencing' claims[.]" *Compton v. State*, 666 S.W.3d 685, 728–29 (Tex. Crim. App. 2023). Even if we assume that *Garza* "applies to other types of individualized sentencing

claims," Abdullah's complaint here is not such a claim. *See id*. at 729. The trial court made an individualized sentencing determination based on the facts of the offense and Abdullah's personal background. Abdullah was not "improperly subjected to a punishment the State lacked the power to impose based on his status or personal characteristics." *Id*. Thus, his reliance on *Garza* for the proposition that individualized-sentencing claims under the Eighth Amendment are not subject to ordinary notions of procedural default is inapposite. *Id*. Because the normal rules of error preservation apply, we overrule Abdullah's last issue.

### *Sua Sponte Reformation of Judgment*

The judgment signed by the trial court recites that the jury found Abdullah guilty of smuggling of persons under 18 years of age, but incorrectly cites the statute for this offense as Texas Penal Code 20.02 (Unlawful Restraint) rather than Texas Penal Code 20.05 (Smuggling of Persons). Because a discrepancy exits, we sua sponte reform the judgment to conform with the jury's verdict. *See* TEX. CODE CRIM. PROC. art. 42.01 (specifying judgment shall reflect the jury's verdict); *Chamblee v. State*, 371 S.W.2d 396, 397 (Tex. Crim. App. 1963) (reforming judgment to conform with jury's verdict); *Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.) ("Our authority to reform incorrect judgments is not dependent on the request of any party, nor does it turn on a question of whether a party has or has not objected in trial court; we may act sua sponte and may have a duty to do so.").

### CONCLUSION

Having overruled Abdullah's appellate issues, and reformed the judgment of the trial court, we affirm the judgment as modified.

Beth Watkins, Justice

DO NOT PUBLISH