

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00460-CR

Dawud **ABDULLAH**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 156th Judicial District Court, McMullen County, Texas
Trial Court No. M-22-0022-CR-B-1
Honorable Starr Boldrick Bauer, Judge Presiding

Opinion by: Rebeca C. Martinez, Chief Justice

Sitting: Rebeca C. Martinez, Chief Justice
Irene Rios, Justice
Adrian A. Spears II, Justice

Delivered and Filed: May 27, 2026

AFFIRMED AS MODIFIED

Dawud Abdullah appeals his conviction for thirty-one counts of smuggling of persons. *See* TEX. PENAL CODE ANN. 20.05(a)(1)(A). He challenges his conviction on multiple grounds, asserting violations of the Double Jeopardy and Confrontation Clauses, the unconstitutionality of the state smuggling statute, and the insufficiency of the evidence, and asserting error in the admission of hearsay testimony, the denial of his motion to suppress, and the imposition of

punishment. We affirm but sua sponte reform the judgment to correctly reflect Abdullah's plea of not guilty to the charged offenses.

**BACKGROUND**

This is the second of two appeals filed by Abdullah arising from the same incident. In 2022, Abdullah was indicted on thirty-one counts of third-degree smuggling of persons and three counts of second-degree smuggling of juveniles under Texas's anti-smuggling statute. *See* TEX. PEN. CODE ANN. §§ 20.05(a)(1)(A), 20.05(b)(1)(B). Abdullah filed a motion to sever the second-degree smuggling counts from the third-degree counts, and the trial court granted Abdullah's motion. Before trial on the severed second-degree counts commenced, Abdullah moved to withdraw his motion to sever and requested that all thirty-four counts be tried together. The court denied the motion. Thereafter, Abdullah was convicted of the three second-degree counts, and he appealed the case to this court while the remaining thirty-one third-degree counts remained pending before the trial court. *See Abdullah v. State*, No. 04-23-00773-CR, 2024 WL 3800661 (Tex. App.—San Antonio Aug. 14, 2024, pet. ref'd) (mem. op., not designated for publication) [hereinafter *Abdullah I*].

In June 2024, before we issued our opinion in *Abdullah I*, trial commenced on the remaining thirty-one third-degree counts. Abdullah pled not guilty to these counts. At the conclusion of trial, a jury found Abdullah guilty of all thirty-one third-degree counts, and the trial court assessed Abdullah's punishment. The instant appeal arises from Abdullah's second trial on these thirty-one third-degree counts, and some of the issues raised in this appeal are the same as those raised in *Abdullah I*.

Evidence from Abdullah's second trial shows that, on May 8, 2022, McMullen County Sheriff's Deputy John Cozad initiated a traffic stop of a U-Haul box truck traveling on Highway

16 around 11:45 pm because he could not clearly read the truck's license plate. Cozad testified that he thought he smelled marijuana when the driver, Abdullah, partially rolled down the window. After briefly questioning Abdullah about his purpose of travel, Cozad collected Abdullah's Nebraska driver's license, performed a computer check on it, and found it had been canceled or revoked. Cozad called another deputy to the scene for backup and then asked Abdullah to step out of the U-Haul and handcuffed him. Abdullah had two passengers in the cab of the vehicle with him, and neither had a valid driver's license. Cozad handcuffed these passengers as well.

According to Cozad, after speaking to the passengers in the cab, he became concerned that there may be people in the back of the U-Haul. Cozad testified that because temperatures had reached 100 degrees during the day, and the back of a U-Haul truck normally does not have ventilation, he worried people in the back of the truck, might need some type of medical attention. K-9 Deputy Robert Gonzales arrived with his drug-detection dog and performed an open-air sweep. Deputy Gonzales testified that the dog did not alert to narcotics but did show interest in the back of the U-Haul. A Sheriff's office investigator, Norm Garza, arrived and drove the U-Haul to a weigh station south of town that was well-lit, off the roadway, and secured by fencing. According to Cozad, Border Patrol was called for backup because deputies believed some of the passengers were illegally present in the United States. Border Patrol Supervisor, Javier Carrillo, dispatched agents to the weigh station to help establish the citizenship of the passengers. At the weigh station, agents and deputies discovered an additional thirty-two individuals in the back of the U-Haul. After determining the passengers were not U.S. citizens, Border Patrol agents transported all thirty-four individuals to the Border Patrol checkpoint in Freer.

At the conclusion of this second trial, the jury found Abdullah guilty of all thirty-one counts. The trial court then determined punishment. After finding two habitual-offender

enhancements to be true, the court sentenced Abdullah to fifty years' imprisonment, to run concurrently with his conviction for the second-degree charges from the earlier case, and a $10,000 fine. After conviction, Abdullah filed a motion for new trial. The trial court denied Abdullah's motion, and he timely appealed.

## ANALYSIS

### *Double Jeopardy*

In his first issue, Abdullah argues that severance of the claims violated the Double Jeopardy Clause of the Fifth Amendment. He argues that because all thirty-four counts arose from the same set of events and transactions, and because the State relied on the same witnesses, severance subjected him to multiple punishments for the same offense.

#### A. *Applicable Law and Standard of Review*

The Double Jeopardy Clause provides protection against a second prosecution for the same offense following a conviction. *See Kuykendall v. State*, 611 S.W.3d 625, 627 (Tex. Crim. App. 2020) (citing *Speights v. State*, 464 S.W.3d 719, 722 (Tex. Crim. App. 2015)). When the offenses comprise multiple charges under the same statute, we first determine the allowable unit of prosecution, then determine how many units of prosecution have been shown at trial. *Speights*, 464 S.W.3d at 722. In other words, "[i]f the offenses are legally the same, the next step is to determine whether the offenses are factually the same based on the unit of prosecution. *Ex parte Castillo*, 469 S.W.3d 165, 169 (Tex. Crim. App. 2016) (citing *Ex parte Benson*, 459 S.W.3d 67, 72 (Tex. Crim. App. 2015)). To prevail, the claimant must prove legal and factual sameness. *Id*.

#### B. *Application*

The parties dispute only whether the thirty-four charges brought against Abdullah in the two proceedings are factually the same. Because factual sameness is contested, our analysis begins

with discerning the unit of prosecution for the offense of smuggling of persons. *Ex parte Hawkins,* 6 S.W.3d 554, 559-60 (Tex. Crim. App. 1999) (en banc). To do so, we start with the language of the statute. *See Kuykendall*, 611 S.W.3d at 628.

At the time Abdullah was charged, Texas Penal Code Section 20.05 read: "(a) A person commits an offense if the person knowingly: (1) uses a motor vehicle . . . to transport an individual with the intent to: (A) conceal the individual from a peace officer or special investigator." TEX. PENAL CODE ANN. 20.05(a)(1)(A).[1] "[A] legislative reference to an item in the singular suggests that each instance of that item is a separate unit of prosecution." *Jones v. State,* 323 S.W.3d 885, 891 (Tex. Crim. App. 2010). Based on the singular references to "an individual" and "the individual" in section 20.05(a)(1)(A), we determine that each person transported constitutes a separate allowable unit of prosecution. *See id.*

Next, we must determine how many units of prosecution were shown at trial. *Speights*, 464 S.W.3d at 724. Here, the allegations in the indictment and the evidence presented at Abdullah's two trials involved thirty-four transported individuals: three juveniles who were the focus of the first trial, and thirty-one adults who were the focus of the second trial. The evidence presented at both of Abdullah's trials included photographs to differentiate and identify each of the thirty-four transported individuals. The individuals from the first prosecution are not the same individuals as those from the second prosecution. Under these circumstances, we hold that thirty-four units of prosecution were shown between the two trials.

Because the record shows that Abdullah was not prosecuted a second time for the three offenses at issue in his first trial but, instead, was charged and convicted of thirty-one offenses

---

[1] Section 20.05(a)(1)(A) has since been amended, but we apply the statute in effect at the time the defendant allegedly committed the charged crime. *Ex parte Carner*, 364 S.W.3d 896, 898 (Tex. Crim. App. 2012).

involving thirty-one different individuals at his second trial, we hold Abdullah's double jeopardy complaint is meritless, and, accordingly, we overrule it.

### *Constitutionality of Texas Penal Code Section 20.05*

Abdullah argues that the statute under which he was convicted, Texas Penal Code section 20.05(a)(1)(A), is unconstitutional because it is field and conflict preempted on its face and as applied to his prosecution. He also argues the statute is unconstitutionally vague and ambiguous.

The facial preemption challenge and the vagueness challenge raised here are identical to those raised in *Abdullah I*, which were previously rejected by this court in *State v. Flores*, 679 S.W.3d 232 (Tex. App.—San Antonio 2023, pet. ref'd). For the reasons articulated in *Flores*, and adopted in *Abdullah I*, we overrule Abdullah's complaints regarding the facial unconstitutionality and vagueness of the statute.

In his brief, Abdullah also argues the human smuggling statute is unconstitutional as applied to his prosecution because of a purported conflict with the punishment scheme in the federal anti-smuggling statute. However, this issue requires preservation in the trial court, which was not satisfied here. *Reynolds v. State*, 423 S.W.3d 377, 383 (Tex. Crim. App. 2014). Abdullah's pretrial motion to dismiss on constitutional grounds asserts that "[a]s applied for Counts 32–34 [i.e., the counts regarding minors]" Abdullah's punishment was greater than it would have been under federal law. The constitutionality of a statute "as applied" to a defendant generally cannot be raised in a pretrial motion because resolution of such issue depends upon the facts of the case presented at trial. *Barker v. State*, 335 S.W.3d 731, 734 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (citations omitted). Courts generally lack authority to conduct a pre-trial evidentiary hearing to determine an "as-applied" challenge. *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 919 (Tex. Crim. App. 2011).

Abdullah did not argue his as-applied preemption argument during trial or in his motion for new trial. Furthermore, he directed his argument in his pretrial motion to dismiss at the counts regarding juveniles and not the counts regarding adults that were the subject of his second trial. Therefore, we hold Abdullah failed to preserve error. *See Lykos*, 330 S.W.3d at 919. *Cf. Gillenwaters v. State*, 205 S.W.3d 534, 537–38 & n.4 (Tex. Crim. App. 2006) (concluding that appellant preserved error on as-applied challenge to statute raised pretrial by raising the issue again in a motion for new trial). We overrule Abdullah's second issue.

### *Suppression*

In his third issue, Abdullah argues the trial court erred in failing to grant his motion to suppress evidence because (1) the stop was illegal, (2) the stop was unreasonably prolonged, and (3) the search of the U-Haul was illegal.

At the outset we note that Abdullah raised the argument that the stop was illegal and unreasonably prolonged in a motion to suppress filed before the case was severed, and we addressed the issue in his first appeal. *See Abdullah I*, 2024 WL 3800661, at *4–8. From our review of the record, the arguments and evidence addressing the legality and prolongment of the stop are substantively the same as those raised in *Abdullah I*.[2] *Id*. In overruling Abdullah's suppression issues, we held that "[t]he objective facts support[ed] a detention for some violation of the Texas Transportation Code" and that "Cozad had reasonable suspicion to prolong the traffic stop because neither Abdullah nor the passengers had a valid driver's license and therefore could not legally drive the U-Haul away." *Abdullah I*, 2024 WL 3800661, at *3, 4. Because the evidence and arguments presented are the same, we adopt our prior ruling that the traffic stop was not illegal or

---

[2] At the suppression hearing held in the instant case, the State introduced the transcript and the court's findings of fact and conclusions of law from the suppression hearing held in the case that was tried first. Additionally, the parties submitted portions of the transcript from Abdullah's first trial at the suppression hearing in the instant case.

unreasonably prolonged, and we limit our analysis to the legality of the search of the U-Haul, which was a matter that was not raised in the earlier case.

*A. Applicable Law and Standard of Review*

The Fourth Amendment protects individuals from unreasonable searches and seizures. *See* U.S. CONST. amend IV; *see also United States v. Banuelos-Romero*, 597 F.3d 763, 766 (5th Cir. 2010). "Warrantless searches and seizures are per se unreasonable unless they fall within a few narrowly defined exceptions." *United States v. Kelly*, 302 F.3d 291, 293 (5th Cir. 2002) (internal citations omitted). "[A] warrantless search of a vehicle is reasonable if law enforcement officials have probable cause to believe that the vehicle contains contraband." *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). Probable cause exists "when the totality of circumstances allows a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *Dixon v. State*, 206 S.W.3d 613, 616 (Tex. Crim. App. 2006) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). To make this determination, the training, knowledge, and experience of law enforcement officials may be considered, but their subjective intent or motivations may not. *Wiede*, 214 S.W.3d at 25. We "afford almost total deference to a trial court's express or implied determination of historical facts and review *de novo* the court's application of the law of search and seizure to those facts." *Id.* (quoting *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).

*B. Application*

In its written order, the trial court adopted all findings and orders from the suppression hearing held in the first case and noted that it had reviewed the transcripts from the first hearing and excerpts submitted from the first trial. The court found that "the K-9 called to the scene is called 'Rona' and she is certified in human trafficking;" "'Rona' will alert by a 'change of behavior;'" and "the testimony from the trial by Officer Gonzales stated she was 'jumping up' and

this indicated a 'change of behavior' and it 'showed interest[.]'" The court concluded that "[t]he search of the vehicle was reasonable as Rona's change of behavior gave the additional probable cause for the search complained of." The record supports these findings; therefore, we afford them almost total deference. *See Wiede*, 214 S.W.3d at 25.

While Abdullah argues the search of the U-Haul was illegal because the canine's "change of behavior" was unreliable and could not serve as the basis to justify the search of the vehicle, the argument improperly narrows the basis for the search and ignores the totality of the circumstances, which the officers presented through testimony. First, Deputy Cozad testified that he believed he smelled marijuana. *See Isaac v. State*, 675 S.W.3d 116, 119 (Tex. App.—San Antiono 2023, no pet.) (concluding that the odor of marijuana can be part of the totality of the evidence supporting probable cause to investigate.). Second, at the suppression hearing, former Deputy Edward Guajardo testified that before the K-9 arrived on the scene, he asked the two front passengers if there were additional people in the cargo hold of the U-Haul. One passenger confirmed that it was "full of people." At that point, deputies could conclude that there was a fair probability of finding contraband or evidence in the U-Haul. *See Dixon*, 206 S.W.3d at 616. *See also Matthews v. State*, 431 S.W.3d 596, 604 n.28 (noting that "if officers otherwise have probable cause to search, a drug-dog's failure to alert on a car does not destroy that probable cause."). Finally, "Rona" exhibited a change of behavior that showed interest in the U-Haul. *See United States v. Martinez*, 102 F.4th 677, 684 (5th Cir. 2024) ("When a dog that is trained to alert to contraband or people does so alert in the near presence of a particular vehicle, that action is sufficient to give rise to probable cause to search that vehicle." (cleaned up)). Under the totality of the circumstances, we conclude that the trial court did not abuse its discretion when it denied Abdullah's motion to suppress the search.

We, therefore, overrule Abdullah's third issue.[3]

### *Admission of Evidence of National Origin*

In his fourth issue, Abdullah alleges the court erred in admitting inadmissible hearsay of the U-Haul passengers' national origin through the testimony of Deputy Cozad and through the testimony of Norm Garza, an investigator for the Sheriff's office.

Hearsay is an out-of-court statement offered into evidence for the truth of the matter asserted. TEX. R. EVID. 801. Testimony explaining how a defendant became a suspect or how the investigation focused on the defendant provides context for an officer's actions and thus is not hearsay because it is not offered for the truth of the matter asserted. *Hernandez v. State*, 585 S.W.3d 537, 554 (Tex. App.—San Antonio 2019, pet. ref'd) (citing *Nickerson v. State*, 312 S.W.3d 250, 262 (Tex. App.—Houston [14th Dist.] 2010, pet ref'd). *See West v. State*, 406 S.W.3d 748, 764 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

*A. Deputy John Cozad's Testimony*

Abdullah argues the trial court erred in admitting "unreliable documentary hearsay" from Sheriff's Deputy John Cozad. During Cozad's testimony, the State asked what led him to ask Abdullah if there was anything in the back of the U-Haul truck. Over Abdullah's objection, Deputy Cozad testified that in speaking to the passengers in the front of the truck,

---

[3] Abdullah argues the trial court erred in denying his motion to suppress, and he concludes his argument in his appellate brief with a single paragraph that asserts: "Based on the foregoing, the Jury also erred when it found evidence obtained from the traffic stop was proper." However, the jury determined a different matter at trial than the trial court determined pre-trial in its ruling on the motion to suppress. In his paragraph concerning the jury, Abdullah does not cite to the trial record or provide argument relevant to the jury's determination of any suppression issue. Therefore, we overrule Abdullah's suppression issue directed at the jury's determination as inadequately briefed. *See* TEX. R. APP. P. 38.1(i) (requiring an appellant's brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). We note that the trial court charged the jury as follows: "Before you may consider the evidence obtained as a result of Deputy John Cozad's stop and detention of Dawud Abdullah, you must all agree that the state has proven, beyond a reasonable doubt, that Deputy John Cozad reasonably believed the license plate of the vehicle in question was not clearly legible at a distance of 50 feet from the rear of the vehicle before Deputy John Cozad stopped him." We held in *Abdullah I* that trial evidence supported such a finding. *See Abdullah I*, 2024 WL 3800661, at *4.

taking [the fact that they didn't have any U.S. documentation] into consideration along with the fact they didn't speak any English. I assume that… I was reasonably sure that they were here illegally. And I was trying to make sure there was no other people to worry about with the heat and everything being in the back of the vehicle[.]

This complained-of testimony was not offered to prove the truth of the matter asserted, but to explain why Deputy Cozad acted in a certain way, and thus was not hearsay.[4] *See Hernandez*, 585 S.W.3d at 554.

### B. *Norm Garza's Testimony*

Norm Garza, who at the time of the incident was an investigator for the Sheriff's office, testified he was tasked with driving the U-Haul to the inspection station. When the State asked Mr. Garza, "what did you believe was the reason why [you were taking the vehicle to the inspection station]," Abdullah lodged a hearsay objection. The court ruled that "[a]s to the hearsay if it's something that he was told or told from a third party not involved in this case then that objection is sustained, but as the question is phrased, he may answer it." Garza responded, "I was informed that there could possibly be loaded with illegal aliens or persons undocumented contained within the box of the U-Haul." After Garza answered, Abdullah did not renew his objection or move to strike the statement. Assuming without deciding that Abdullah's initial objection was sufficient to preserve error, we overrule Abdullah's complaint about Garza's testimony because it is not hearsay. Officer Garza's statement was not offered for the truth of the matter asserted, but was

---

[4] Abdullah's brief states, "[d]uring Deputy Cozad's testimony, the Defense objected to the admission of statemetns [sic] from the passengers was a violation of the confrontation clause". However, this section fails to provide substantive analysis as to how the admitted testimony introduced through Deputy Cozad was in violation of the Confrontation Clause; consequently, we hold Abdullah's Confrontation Clause argument concerning the passengers is waived for inadequate briefing. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Additionally, we note that statements offered and admitted for a non-hearsay purpose do not implicate Confrontation Clause rights and are admissible under *Crawford v. Washington*, 541 U.S. 36 (2004). *West v. State*, 406 S.W.3d 748, 764 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (citing *Del Carmen Hernandez v. State*, 273 S.W.3d 685, 688–89 (Tex. Crim. App. 2008).

offered to explain why Officer Garza drove the U-Haul to the inspection station. *See Hernandez*, 585 S.W.3d at 554.

### *Confrontation Clause and Witness Unavailability*

Abdullah also argues the admission of out-of-court statements from the U-Haul passengers regarding their national origin, which was admitted through Border Patrol Supervisor Carrillo's testimony, violated Abdullah's confrontation rights and was inadmissible hearsay.

Over Abdullah's objections, the trial court admitted Border Patrol Supervisor Carrillo's testimony regarding his questioning of the thirty-one passengers. Carrillo explained that when an agent arrives to a scene, they take a declaration from the suspected subject and, if someone indicates they are not a United States citizen, they are transported to the Border Patrol station. Carrillo testified that after thirty-four individuals were transported to the Border Patrol station, he collected the names and places of birth of each individual and prepared a report. The State elicited these names and places of birth for every individual. Carrillo also testified that all the passengers were deported from the United States. The trial court found the passengers "unavailable."

*A. Standard of Review and Applicable Law*

If "testimonial evidence is at issue," then "the Sixth Amendment demands what the common law required: [witness] unavailability and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68 (2004). Statements are testimonial if "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006). We review a trial court's finding on the testimonial nature of a statement de novo. *Elsik v. State*, 678 S.W.3d 360, 365 (Tex. App.—San Antonio 2023), *aff'd* 714 S.W.3d 27 (Tex. Crim. App. 2024) [hereinafter *Elsik I*] (citing *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006)).

Generally, hearsay is inadmissible unless it falls within an exception. TEX. R. EVID. 801–804. We review a trial court's decision to admit hearsay under an abuse of discretion standard and must affirm the trial court's decision unless it was so clearly wrong as to lie outside the zone of reasonable disagreement. *Elsik I*, 678 S.W.3d at 366–67. *Accord Taylor v. State*, 268 S.W.3d 271, 579 (Tex. Crim. App. 2008). The erroneous admission of hearsay is non-constitutional error that is subject to a harm analysis under Texas Rule of Appellate Procedure 44.2(b). TEX. R. APP. P. 44.2(b). Under that rule, an appellate court disregards error that does not affect a defendant's substantial rights. TEX. R. APP. P. 44.2(b).

*1. Confrontation Clause*

Abdullah argues that the passengers' statements relating to their names and nationalities were testimonial, and their admission through Carrillo constituted a violation of the Sixth Amendment's Confrontation Clause.

We rejected a similar argument in *Elsik I*, 678 S.W.3d at 366. In *Elsik I*, a Border Patrol agent testified that he interviewed the passengers in a smuggling case to determine their eligibility to remain in the country and subsequently deported them. *Id.* at 365. The agent's "primary purpose" in questioning the passengers "was to elicit routine biographical information that is required of every foreign entrant for the proper administration of our immigration laws and policies." *Id.* (citing *United States v. Caraballo*, 595 F.3d 1214, 1226–27 (11th Cir. 2010)). We concluded that the passenger's statements were not testimonial because "the circumstances objectively indicate that the primary purpose of [the agent's] interviews was other than to establish or prove past events potentially relevant to later criminal prosecution." *Elsik I*, 678 S.W.3d at 366 (internal citations omitted).

Here, similarly, Carrillo testified that the purpose of obtaining the individuals' country of birth "is to figure out what country they will be expelled to." The circumstances surrounding Carrillo's questioning suggest that the information elicited from the passengers was sought for this purpose. Therefore, we hold the circumstances objectively indicate that the primary purpose of Carrillo's interviews was something other than to establish or prove past events potentially relevant to later criminal prosecution. *See id.* Consequently, the passengers' statements are not testimonial and their admission did not violate Abdullah's confrontation rights. *See Elsik v. State,* 714 S.W.3d 27, 42 (Tex. Crim. App. 2024) [hereinafter *Elsik II*] ("the [statements to the Border Patrol agent] at issue here [were] nontestimonial—it was admitted as statements of personal or family history. The confrontation clause is not implicated.").

*2. Hearsay*

Under Texas Rule of Evidence 804, hearsay statements about "the declarant's own birth . . . or other similar facts of personal or family history" are admissible if "the declarant is unavailable as a witness." TEX. R. EVID. 804(b)(3)(A). The State concedes that the Court of Criminal Appeals rejected a similar unavailability justification for introducing similar testimony of passengers' statements in *Elsik II,* 714 S.W.3d 27, 42 (Tex. Crim. App. 2024). For the reasons articulated in *Elsik II*, we hold that the passengers' statements about their personal history, including their country of birth, were not properly admitted under Texas Rule of Evidence 804 at Abdullah's trial. *Id*. However, we hold that this error was harmless.

In determining whether the erroneous admission of hearsay affected a defendant's substantial rights, the following nonexclusive factors are considered: "the character of the alleged error and how it might be considered in connection with other evidence; the nature of the evidence supporting the verdict; the existence and degree of additional evidence indicating guilt; whether

the state emphasized the complained-of error; the trial court's instructions; the theory of the case; and, relevant voir dire." *Cook v. State*, 665 S.W.3d 595, 599 (Tex. Crim. App. 2023) (citing *Motilla v. State*, 78 S.W.3d 352, 356–58 (Tex. Crim. App. 2002), *and*, *Schutz v. State*, 63 S.W.3d 442, 444–46 (Tex. Crim. App. 2001)). *See* TEX. R. APP. P. 44.2(b). A conviction should not be overturned if, from review of the record, we have a fair assurance that the non-constitutional error did not influence the jury or had but a slight effect. *Taylor*, 268 S.W.3d at 592.

After considering the above factors, we have fair assurance that the admission of hearsay evidence about the passengers' personal history did not influence the jury or had but a slight effect on the jury's verdict. *See Elsik I*, 678 S.W.3d at 370. Carrillo's hearsay statements regarding the individuals' places of birth did not go to the heart of the State's case. *See id*. at 369. Neither the name nor the nationality of the transported individual is an element of the offense of smuggling. *See* TEX. PENAL CODE ANN. 20.05(a)(1)(A). In addition, voir dire focused on the elements of the offense and the concept of "intent to conceal," not on the immigration status of the smuggled individuals. Indeed, the State emphasized in voir dire that it does not have to prove whether a person was or was not an illegal immigrant. At closing, the State did not bring up Carrillo's testimony and instead focused on other evidence that was probative of Abdullah's intent to conceal. This evidence included dash-camera videos that showed (1) the initial stop, (2) Abdullah's statements, and (3) the removal of thirty-one individuals from Abdullah's U-Haul. Additionally, admitted photos showed the hole in the roof of the U-Haul and the passengers found in the back. The trial court appropriately instructed the jury at the guilt-innocence phase of trial that "[a] person commits the offense of smuggling of persons when the person knowingly uses a motor vehicle to transport an individual with intent to conceal the individual from a peace officer." The trial court's instruction did not reference immigration status.

On this record, we have a fair assurance that the erroneously admitted hearsay evidence of the passengers' personal history did not influence the jury or had but a slight effect. *Taylor*, 268 S.W.3d at 592. Accordingly, we overrule Abdullah's fifth issue.

### *Jury Instructions*

In his sixth issue, Abdullah argues the trial court erred in denying his requested jury instructions. Abdullah's attorney requested instructions defining "complainant" and "conceal," a limiting instruction on certain statements, and an instruction on fairness.

### A. *Applicable Law and Standard of Review*

"The Code of Criminal Procedure requires that instructions to the jury be limited to setting forth the law applicable to the case and that they not express any opinion as to the weight of the evidence." *Green v. Texas*, 476 S.W.3d 440, 445 (Tex. Crim. App. 2015). *See* TEX. CODE. CRIM. PRO. ANN. art. 36.14. "The purpose of the jury charge is to inform the jury of the applicable law and guide them in its application to the case." *Beltran De La Torre v. State*, 583 S.W.3d 613, 617 (Tex. Crim. App. 2019) (quoting *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). "[J]ury-charge error stems from the denial of a defendant's right to have the trial court provide the jury with instructions correctly setting forth the 'law applicable to the case.'" *Bell v. State*, 635 S.W.3d 641, 645 (Tex. Crim. App. 2021) (quoting *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998); TEX. CODE CRIM. PROC. ANN. 36.14). Review of purported error in a jury charge requires determination of whether the jury instruction is erroneous, and if so, evaluation of whether

the harm was sufficient to require reversal. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).

### B. Application

#### 1. Hearsay Limiting Instruction

Abdullah contends the trial court erred in failing to include a limiting instruction on hearsay in the jury charge. Under Texas Rule of Evidence 105, the party complaining about the admission of evidence that is admissible for one purpose but not for another must seek a limiting instruction "at the time that evidence is admitted" to preserve his claim. *Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007). *See* TEX. R. EVID. 105. "Once evidence has been admitted without a limiting instruction, it is part of the general evidence and may be used for all purposes." *Delgado*, 235 S.W.3d at 251. As we discussed in the previous section, there were three instances when statements were proffered by the State under a hearsay exception or not for the truth of the matter asserted. However, Abdullah did not request a limiting instruction after any of the statements were introduced. Because Abdullah did not request a limiting instruction at the time the evidence was introduced, the trial court did not err by failing to include such an instruction in the jury charge. *See id.* at 254.

#### 2. Definition of "Conceal"

Abdullah argues the trial court erred in denying his request to define "conceal" as "to conceal the truth or to place out of sight." Abdullah asserts that, due to the statute's "vagueness," a definition was necessary to avoid jury confusion.

"As a general matter, definitions for terms that are not statutorily defined are not considered to be the 'applicable law' under Article 36.14, and it is thus generally impermissible for the trial court to define those terms in the jury instructions." *Green*, 476 S.W.3d at 445 (citations omitted).

Nonetheless, a jury charge may properly define non-statutorily defined terms that "have a known and established legal meaning, or which have acquired a peculiar and appropriate meaning in the law, as where the words have a well-known common law meaning." *Id*. Additionally, a trial court may not comment on the weight of the evidence by adopting a particular definition for a non-statutorily defined term that would improperly impinge on the jury's fact-finding authority. *See Kirsch*, 357 S.W.3d at 652 (holding that court erred in defining the term "operate" in DWI case because definition improperly impinged on the jury's fact-finding authority); *see also Beltran de la Torre*, 583 S.W.3d at 622 (holding appellant was not entitled to a special, non-statutory definition because it would have amounted to an impermissible comment on the weight of the evidence).

We hold the trial court did not err by denying Abdullah's request to define the term "conceal." The Texas Penal Code does not define the term "conceal," and neither party asserts that the term has a known and established legal meaning; therefore, jurors could have assigned the term any meaning which is acceptable in common parlance. *See* TEX. PENAL CODE § 20.05(a)(1)(A); *Kirsch*, 357 S.W.3d at 650. Moreover, had the trial court defined the term, it risked commenting on the weight of the evidence. *See Beltran De La Torre*, 583 S.W.3d at 622.

### 3. Fairness Instruction and Definition of "Complainant"

Abdullah further argues the court erred in denying his request for a "fairness instruction" and in denying his request to define "complainant." The requested fairness instruction stated, "a juror should not be influenced on account of a person's race, color, national origin, ancestry, gender, religion, religious practice, a[ge] o[r] disability, and a fair juror should be mindful of any stereotypes." Abdullah requested the court define "complainant" as "a person who brings an action in a court of law" and argued that by including "complainant" in the indictment, the State "implied

that each smuggled person expressed dissatisfaction at being smuggled" and "was arguably bound to prove in fact the smuggled person was a complainant." Abdullah provided no authority to require such instructions or to suggest harm for the failure to include these instructions.

The Texas Rules of Appellate Procedure provide that an appellate brief "must contain a clear and concise argument for the contentions made, with appropriate citation to authorities and to the record." TEX. R. APP. P. 38.1(i). An appellate court has no "obligation to construct and compose [an] appellant's issues, facts, and arguments with appropriate citations to authorities and to the record." *Wolfe v. State*, 509 S.W.3d 325, 342–43 (Tex. Crim. App. 2017) (quoting *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008)). Because Abdullah failed to properly brief his assertions about a fairness instruction and the definition of "complainant," nothing is presented for review. *See Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011) (holding that appellant's point of error was "inadequately briefed and presents nothing for review as this Court is under no obligation to make appellant's argument for her."). Accordingly, we overrule Abdullah's sixth issue.

### *Sufficiency*

In his seventh issue, Abdullah argues that the evidence is insufficient to support his convictions for smuggling the thirty-one passengers because the State did not prove his intent to conceal.

### A. *Applicable Law and Standard of Review*

We review a challenge to the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). Under that standard, we examine all the evidence in the light most favorable to the verdict and resolve inferences from the evidence in the verdict's favor to determine whether any

rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015). "[N]o evidence is ignored because the standard requires a reviewing court to view all of the evidence in the light most favorable to the verdict." *Cary v. State*, 507 S.W.3d 750, 759 n.8 (Tex. Crim. App. 2016) (internal quotation marks and emphasis omitted).

*B. Application*

Abdullah argues there was insufficient evidence of concealment to warrant a guilty verdict because the deputies were able to observe the two passengers in the cab. While the trial evidence supports Abdullah's contention that the deputies could observe the passengers in the cab, other evidence supports the jury's implied findings of Abdullah's intent to conceal these two individuals. Viewed favorably to the verdict, trial evidence showed that Abdullah drove the U-Haul late at night, and, when pulled over by Deputy Cozad, Abdullah rolled the window down just enough to give Cozad his driver's license. When Deputy Cozad asked Abdullah where he was coming from and where he was going, Abdullah told him that he was coming from Laredo and was headed to San Antonio. When Cozad asked Abdullah about the two front passengers, Adullah stated "those are just some guys that helped load the stuff up." When asked how he met them, Abdullah responded, "Oh, I just saw them—met them around, they do day labor."

We hold that this evidence could allow a rational trier of fact to find beyond a reasonable doubt that Abdullah acted with intent to conceal the two passengers in the cab from detection by law enforcement. *Cf. Ross v. State*, 154 S.W.3d 804, 812 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd.) (making false statements to cover up the crime indicates a "consciousness of guilt" and is admissible to prove that defendant committed the offense.). We, therefore, conclude that

sufficient evidence supports the finding that Abdullah intended to conceal the two passengers riding in the cab of the U-Haul.

As to the other twenty-nine passengers in the cargo hold of the U-Haul, Abdullah argues "there was no evidence the back passengers were hiding, as there were no covered windows, nor were there boxes, for example, used for concealment." Abdullah refers to the language in section 20.05(a)(2) requiring proof of harboring a non-citizen and the Fifth Circuit's holding in *Cruz v. Abbott*, 849 F.3d 594, 599 (5th Cir. 2017), that harboring requires "some level of covertness." However, Abdullah was prosecuted under section 20.05(a)(1)(A), which does not contain a harboring element. Furthermore, the State presented evidence that was sufficient to establish Abdullah's intent to conceal the twenty-nine passengers in the back of the U-Haul. First, the evidence established that Abdullah transported the passengers in the cargo hold of the U-Haul and that someone had cut a hole in the roof of the cargo hold for ventilation because it had no windows. *See United States v. Barron-Cabrera*, 119 F.3d 1454, 1461(10th Cir. 1997) (noting utility of moving truck as smuggling vehicle because it is designed to carry heavy cargo in a windowless trailer; "its cargo may be concealed without the use of 'concealed compartments'"). Second, when Deputy Cozad asked what Abdullah was transporting in the cargo hold, he gave a false story that he was transporting some of his deceased grandfather's possessions to his mother, indicating a consciousness of guilt. *See Ross*, 154 S.W.3d at 812. These facts could allow a rational trier of fact to find beyond a reasonable doubt that Abdullah acted with an intent to conceal the passengers in the cargo hold of the U-Haul from detection by law enforcement. *See United States v. Yusuf*, 57 F.4th 440, 445–46 (5th Cir. 2023) (fact that defendant was sole driver of truck was probative of his knowledge of hauling non-citizens riding in the trailer).

Therefore, we hold the evidence was sufficient to support Abdullah's convictions as to all thirty-one passengers in the U-Haul, and we overrule Abdullah's seventh issue.

### *Enhancements*

In his eighth issue, Abdullah argues his "[h]abitual felon enhancement was improper because one of the old felony convictions used for enhancement occurred when he was 15 years old and the other was for possession with intent to deliver marijuana for a prison term of only one year, which is the equivalent of a state jail felony." The arguments in this case are the same as those raised in *Abdullah I*, in which we overruled Abdullah's enhancement complaints. 2024 WL 3800661 at *18–19. Accordingly, for the reasons articulated in *Adullah I*, we overrule Abdullah's eighth issue.

### *Cruel and Unusual Punishment*

In his ninth issue, Abdullah argues his fifty-year sentence for smuggling of persons, with a habitual felony enhancement, was grossly disproportionate to the offense in violation of the United States and Texas Constitutions. The State argues that Abdullah waived this issue.

To preserve error for appellate review, a party must present a timely objection to the trial court, state the specific grounds for the objection, and obtain a ruling. TEX. R. APP. P. 33.1(a). Abdullah did not make an Eighth Amendment objection to his sentence when it was pronounced, but his motion for new trial asserts, "The sentence of 50 years' prison with a finding of Habitual Felon Offender to be served concurrently with his sentence of 35 years' prison in cause number M-22-0022-CR-B violates the Constitution because it is cruel *and* unusual punishment" (emphasis added). The trial court denied the motion.

Article 1, section 13 of the Texas Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted." TEX. CONST.

art. 1, § 13. This language is nearly identical to the Cruel and Unusual Punishment Clause of the Eighth Amendment, except that the Texas Constitution states its prohibition disjunctively — "cruel or unusual" punishments — and the Eighth Amendment states its prohibition conjunctively — "cruel and unusual." *Compare* U.S. CONST. amend. VIII *with* TEX. CONST. art. 1, § 13. *See also Valdez v. State*, No. 10-12-00410-CR, 2014 WL 505306, at *1 (Tex. App.—Waco Feb. 6, 2014, pet. ref'd) (mem. op., not designated for publication). Because Abdullah's motion for new trial states only that his sentence "violates the Constitution because it is cruel and unusual punishment," we hold that he has preserved only a federal Eighth Amendment complaint and not also a complaint under the state constitution. *See Ajisebutu v. State*, 236 S.W.3d 309, 313 (Tex. Ct. App.—Houston [1st Dist.] 2007, pet. ref'd.) (holding appellant did not preserve cruel or unusual challenge under Texas Constitution where motion for new trial referenced only cruel and usual argument).

The Eighth Amendment prohibits the imposition of cruel and unusual punishments. *See* U.S. CONST. amend. VIII; *Graham v. Florida*, 560 U.S. 48, 58–60 (2010). Generally, "punishment assessed within the statutory limits, including punishment enhanced pursuant to a habitual-offender statute, is not excessive, cruel, or unusual." *State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016). Nevertheless, the Eighth Amendment prohibits punishment within the statutory limits if the sentence is grossly disproportionate to the offense. *Graham*, 560 U.S. at 59–60. "To determine whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime, a court must judge the severity of the sentence in light of the harm caused or threatened to the victim, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses." *Simpson*, 488 S.W.3d at 323 (citing *Graham*, 560 U.S. at 60).

As indicted, smuggling of persons is a third-degree felony, punishable by a term of confinement for not more than ten nor less than two years and a possible fine not to exceed

$10,000. TEX. PENAL CODE §§ 12.34, 20.05(b). With Abdullah's habitual offender enhancement, he faced a punishment range of 25–99 years in prison. *See* TEX. PENAL CODE § 12.42(d). Abdullah's fifty-year sentence, to be served concurrently with his three convictions for second-degree smuggling of persons, and $10,000 fine fell well within the punishment range. Abdullah was convicted of transporting thirty-one individuals in the cargo hold of a U-Haul truck, with only an opening cut into the roof for ventilation, on a night when temperatures had reached 100 degrees during the day. We hold appellant's sentence is not grossly disproportionate to his crime. Consequently, we overrule Abdullah's ninth issue.

### *Sua Sponte Reformation of Judgment*

The judgment signed by the trial court recites that the jury found Abdullah guilty of smuggling of persons but incorrectly relates that Abdullah pled guilty. Because a discrepancy exists, we sua sponte reform the judgment to reflect that Abdullah pled not guilty. *See* TEX. CODE CRIM. PROC. ANN. art. 42.01 (specifying judgment shall reflect the defendant's plea to the charged offense); *Craig v. State*, 480 S.W.2d 680, 685 (Tex. Crim. App. 1972) (reforming judgment to reflect that appellant entered a plea of not guilty); *Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.) ("Our authority to reform incorrect judgments is not dependent on the request of any party, nor does it turn on a question of whether a party has or has not objected in trial court; we may act sua sponte and may have a duty to do so.").

### CONCLUSION

Having overruled Abdullah's appellate issues and reformed the judgment of the trial court, we affirm the judgment as modified.

Rebeca C. Martinez, Chief Justice

DO NOT PUBLISH